In the Matter of the Application of INEZ EVANS, Respondent, for a Mandamus Order against CHARLES W. BERRY, as Comptroller of the City of New York, Appellant.*

First Department, July 1, 1932.

*Henry J. Shields, Assistant Corporation Counsel,* of counsel [*J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the appellant.

*Irwin J. Sikawitt* of counsel [*Lyman & Lyman,* attorneys], for the respondent.

TOWNLEY, J.  The order appealed from directed the comptroller of the city of New York to pay to the petitioner, Inez Evans, the sum of $6,740, the amount of an award made to her by the board of estimate and apportionment under a resolution adopted by that board on January 26, 1928, with interest amounting to $1,550.20, making a total of $8,290.20.

Petitioner, who was near the scene of a holdup in the Bronx on the evening of February 5, 1927, was shot by a stray bullet fired by one of the police officers who was pursuing the highwaymen. The petitioner suffered serious injuries and was put to expense and loss of compensation which amounted to the sum awarded by the board of estimate and apportionment.  Concededly, the city of New York is not liable at common law for injuries to innocent

* Revg. 141 Misc. 920.

bystanders due to negligent shooting by police officers in the performance of their duty. Any recovery must, therefore, be based on some equitable power of the city to pay the claim.

The petition was made under Local Law No. 13, 1927, passed by the municipal assembly. Power to pass this law is based on the amendment to article 12, section 3, Constitution of the State of New York, adopted November 6, 1923, the City Home Rule Law, article 2, section 11, subdivisions 1 and 2, in effect April 25, 1924, and General City Law, section 20, subdivision 5 (as added by Laws of 1913, chap. 247), which provides that a city is empowered to " pay or compromise claims equitably payable to the city, though not constituting obligations legally binding on it   *   *   *."

Local Law No. 13, for the year 1927, reads as follows:

" Section 1. The board of estimate and apportionment is hereby authorized and empowered, in its discretion, to make an award to a person who has been or hereafter shall be injured by a police officer while such officer is engaged in arresting any person or in retaking any person who has escaped from legal custody or in executing any legal process. Such award shall be of such amount as the board of estimate and apportionment shall deem just and equitable."

Accordingly, this award is based on constitutional and legislative authority, provided the claim is to be deemed an equitable obligation of the city of New York, and provided Local Law No. 13 is not in conflict with the provisions of article 8, section 10, Constitution of the State of New York. This section provides as follows:

" Section 10. No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes   *   *   *."

In substance the claim of the city of New York is that the local law is unconstitutional because the city may not give money to individuals to reimburse them unless the city has received or will receive some advantage from the acts of the claimant. It is further claimed that while the State of New York might theoretically make compensation for such a moral obligation, the municipality may not do it since any conceivable moral benefits from such a payment would accrue to the State and not to the city, since it is the duty of the State and not the municipality to preserve the peace. The third claim is that the award in this instance cannot be made in any event because the injuries occurred on February 5, 1927, while Local Law No. 13, 1927, was not enacted until December 10, 1927.

It seems clear that under the section of the General City Law quoted above the proper municipal authorities could compromise any particular claim that would come under the definition of the cases defining equitable claims against the city. The passing of Local Law No. 13, 1927, therefore, has added nothing to the power of the city of New York to pay equitable claims. It has merely stated a general policy to entertain claims by all innocent bystanders who are shot by policemen in the performance of their duty instead of leaving it to individual claimants as the occasion arose to attempt to persuade authorities that their claim should be heard. The true question, therefore, seems to us to be not whether Local Law No. 13, 1927, is constitutional but whether petitioner's claim is an equitable claim within the meaning of the provision of the General City Law.

The test laid down by the courts by which a claim is to be deemed either a gift of public money for private purposes or a just and equitable claim against the State not enforcible in law has been discussed in *Matter of Kilroe* v. *Craig* (208 App. Div. 93; affd., 238 N. Y. 628). In that case this court, by MERRELL, J., said (p. 97): " So far as our attention has been directed there is no controlling authority holding that any claim may be enforced against the city where the city has not received some benefit from the expenditure forming the basis of the claim." This view was not novel but was a restatement of the rule made by RUMSEY, J., in *Matter of Straus* (44 App. Div. 425, 429): " The other class of moral obligations includes those which have not been preceded by any legal liability, and yet which might be sufficient to authorize the Legislature to require their satisfaction, and which certainly would justify an honorable man in meeting them. Such are cases where money has been expended for the benefit of the city by one without any authority, and the city has received the full benefit from the expenditure, or such an obligation as existed in *Town of Guilford* v. *Supervisors of Chenango County* [13 N. Y. 143] or in *Wrought Iron Bridge Co.* v. *Town of Attica* [119 id. 204]."

A similar decision was made by POUND, J., now Chief Judge POUND, at Special Term in 1915 (*Mollnow* v. *Rafter*, 89 Misc. 495). That case involved compensating a citizen for an unwarranted assault by a police officer. The policeman was sued by an infant and the infant recovered $531.92. The common council of the city of North Tonawanda directed that an order be drawn in favor of the policeman to pay the judgment and his legal expenses. A taxpayer's action was brought to restrain the payment. The policeman offered to present a satisfaction of judgment showing that the money was paid to the infant. Judge POUND, construing

subdivision 5 of section 20 of the General City Law (as added by Laws of 1913, chap. 247), known as the Home Rule Act, which provided that the city was empowered to pay " claims *equitably* payable by the city, though not constituting obligations *legally* binding on it," held that the payment to a policeman would be in fact a payment to the infant and in no sense the payment of expenses incurred by the policeman as a public officer. He said: " The defendants' doctrine of nonbinding equitable claims under the Home Rule Act, if applied to such cases as this, would be fraught with many dangers. The city, being under no legal obligation to pay, could not be *compelled* to pay such judgment. If it might, *in its discretion*, pay, it might pay ' A ' and refuse to pay ' B,' when both had recovered damages against a police officer for assault inflicted in the same illegal arrest. It might pay judgments recovered against police officers by Attorney X and refuse to pay judgments recovered by Attorney Y. If it should be held that Wiedman could be paid, the common council of a city might, in its discretion, audit such claims without suit.

" Equity is not law turned upside down. It would be immoral for a city to have an over-sensitive conscience in allowing fancied moral claims against it. The allowance of an equitable claim against a city, as distinguished from a legal claim, suggests in the main the waiver of some technical defense, such as the failure to present a verified claim, rather than the recognition or creation of an obligation which the law says is fundamentally a claim against an individual and not in any sense a claim against the city. It follows that Wiedman has no claim against the city and that to take the city's money to pay him would be a gift to him and thus inhibited by the Constitution, whether the money passed through Kinzly's hands or not."

In effect the claim before us is on all fours with *Mollnow* v. *Rafter (supra)*, except that the amount awarded has not been fixed after a trial but has been assessed by what is essentially an administrative body.

The farthest that the courts of this State have gone seems to have been to allow recovery for injuries done to employees of the State in the course of their employment (*Babcock* v. *State of New York*, 190 App. Div. 147; *Munro* v. *State of New York*, 223 N. Y. 208), or for compensation for a misrepresentation concerning the value of certain bonds, the proceeds of the sale of which went to the State (*Williamsburgh Savings Bank* v. *State*, 243 N. Y. 231), or to reimburse an employee of the State who was wrongfully discharged by the State Comptroller (*Farrington* v. *State*, 248 N. Y. 112).

In all the cases discussed above, the State of New York was in some direct relation either by contract or by relation of master and servant with the party reimbursed. We think that on the basis of the prior decisions in this State, petitioner's claim does not come under the category of equitable claims.

It may be said, however, that the effect of Local Law No. 13, 1927, is to declare a new policy on the part of the people of the city of New York and that the gist of this new policy is that the conscience of the community demands that such claims be paid. If the law be interpreted as a general resolution, it could not override the constitutional prohibition against gifts. It required for instance constitutional amendments to permit the People of the State of New York to pay a soldiers' bonus and to give civil service preferences to war veterans. Similarly, it should require an unmistakable constitutional mandate before either courts or Legislatures should declare claims against the State equitable and reasonable which from time immemorial people have considered purely incidental to the administration of the police power and undeserving of reparation. (See *Caudill* v. *Pinsion,* 233 Ky. 12; 24 S. W. [2d] 938.)

With this view of the law it is unnecessary to pass upon the applicability of the special statute to petitioner's claim or to discuss whether, assuming that the claim could be entertained, an orderly scheme has been devised under it whereby all parties similarly injured may present their claims to have them passed on subject to review with the certainty that all citizens will be afforded equal protection of the law. (See *Williamsburgh Savings Bank* v. *State, supra.*)

Accordingly, the order should be reversed, with ten dollars costs and disbursements, and the motion denied, with fifty dollars costs.

FINCH, P. J., MERRELL, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs.