21 P.(2d) 90

## DOUGHERTY v. VIDAL et al.

### No. 3825.

Supreme Court of New Mexico.

April 6, 1933.

Hanna & Wilson and William A. Brophy, all of Albuquerque, for appellant.

E. K. Neumann, Atty. Gen., for appellees.

WATSON, Chief Justice.

This suit is against S. P. Vidal and two others, county commissioners of McKinley county, and Frank Butt and four others, constituting the state highway commission. The complaint sets up that, at the instance and request of the highway commission, plaintiff granted to the county an easement for road purposes; to which he was induced by, and the only consideration for which was, a promise of defendants not to change the grade of the then road; and that defendants proceeded to construct a new road on a grade four feet higher than the old, to plaintiff's damage $7,500.

Plaintiff prayed: First, for a cancellation of the grant; second, for injunction against maintaining the new road; and, third, for the appointment of appraisers to assess damages, and for an order directing payment of the damages so to be assessed "out of the state road fund from moneys furnished for that purpose by co-operative agreement between the state, the federal government, and the county of McKinley, or if no moneys are available in such fund, that same be advanced on behalf of said county of McKinley out of money in the state road fund as provided by law."

Defendant Butt and his associate state highway commissioners demurred on the ground "that said complaint shows upon its face that said action is brought against these defendants in their official capacity as state officials, as the State Highway Commission, and, as such, is a suit against the state, and cannot therefore be maintained."

The demurrer was sustained and the complaint dismissed as to the demurring defendants. Plaintiff appeals from the final judgment.

In presenting his case here appellant disregards the first and second prayers. His argument is directed solely to establish his right under this complaint to an assessment and recovery of his damages.

"It is a fundamental doctrine at common law and everywhere in America that no sov-

ereign state can be sued in its own courts or in any other without its consent and permission." State ex rel. Evans v. Field, 27 N. M. 384, 201 P. 1059, 1060. But appellant contends, first, that this is not a suit against the state, and, second, that if a suit against the state, it is one consented to by the state.

Originally appellant must have doubted the capacity of the highway commission to be sued. The nominal defendants are the individual commissioners. However that may be, he now contends that the suit is against the commission, and so not against the state. If the commission may be sued, we can readily accept this view.

■ Where an arm or agency of the state has been clothed with corporate powers enabling it to contract, take title, sue, and be sued in its own name, we have held that the citizen may have his action against it. Locke v. Board of Trustees, 23 N. M. 487, 169 P. 304. Such a suit is not against the state. It is against a corporate entity, engaged in the state's business it is true, but pursuing it on its own responsibility, not on the state's faith and credit. Even in such a case the suitor must rest content with the relief he can obtain as against the corporation itself. The state is in no manner bound by the judgment. State v. Locke, 29 N. M. 148, 219 P. 790, 30 A. L. R. 407.

■ On the other hand, an arm or agency not endowed with these corporate powers is deemed the state itself. It may not be sued, not only because it lacks the legal capacity, but because the state, of which it is the mere agent, is immune from suit. Looney v. Stryker, 31 N. M. 557, 249 P. 112, 50 A. L. R. 1404.

Thus we have considered the law settled in this jurisdiction. Appellant urges a different rule. He first points out the important functions and broad powers of the highway commission, and then advances this doctrine: "When a state creates a functional or operating unit with broad powers and that unit in the exercise or in excess of its powers, takes or damages private property, the courts will not permit the unit to hide behind the fog of 'immunity from suit' but will permit the person injured to sue the unit. This is so even though the statute creating the unit does not expressly allow suit, does not create the unit as a corporation, and although the unit is an operating branch of the state."

Weyler v. Gibson, 110 Md. 636, 73 A. 261, 17 Ann. Cas. 731, cited by appellant, was held not a suit against the state. But it is not in a class with the case at bar. It was an action in ejectment against the warden of the state penitentiary, and was decided upon the principle of Board of Trustees v. Pooler, 32 N. M. 460, 259 P. 629. Appellant may originally have considered that the present suit was against the individual commissioners as for a tort. If so, he has abandoned that position.

Church v. State Highway Department, 254 Mich. 666, 236 N. W. 900, is a peculiar case. The highway department was authorized by law to condemn private property, but enjoined to purchase by agreement, if possible. It contracted with the owner, leaving the

damages to be ascertained by an arbitrator, who should have all the statutory powers of arbitrators. The arbitrator made his award and filed it in court, and the owner moved for confirmation. It was thereupon objected that the proceeding amounted to a suit against the state. The Supreme Court affirmed the confirmation. It said expressly that it was not a suit against the state. The reasoning, however, would seem rather to have been directed toward a conclusion that it was a suit against the state, but one consented to.

Warren Bros. Co. v. Kibbe et al. (D. C.) 43 F.(2d) 582, 584, is also based on distinctive facts. Whether the district judge deemed the suit one against the state may be doubted. He did hold, under the facts, that "the state has impliedly given its consent that the highway commission may be sued."

In Hollister v. State, 9 Idaho, 8, 71 P. 541, the court's holding that the state had consented to that kind of suit was undoubtedly sound.

In Gross v. Kentucky Board of Managers of World's Columbian Exposition, 105 Ky. 840, 49 S. W. 458, 43 L. R. A. 703, it was held by a divided court that the Legislature had created the board a quasi corporation—a questionable conclusion, as pointed out in the dissenting opinion. It was based upon the fact that the Legislature had endowed the board with a certain amount of money, and had by resolution disclaimed all liability to the public for expenses, charges, arrears, or indebtedness which might remain unpaid after expenditure of the appropriation.

On the authority of this case, but lacking a similar state of facts, a federal District Court upheld a suit for damages for breach of contract against the Kentucky State Board of Charities and Corrections. Bromwell Brush & Wire Goods Co. v. State Board of Charities & Corrections (D. C.) 279 F. 440.

These are the authorities upon which appellant relies. They do not in our judgment strongly support his contention, nor do they persuade us to depart from the rule we consider settled in this jurisdiction. Of course, the Legislature might subject the highway commission to suit without creating it a corporation, or vice versa, as held in the Kentucky cases. But, as respects the New Mexico highway commission, every power distinguishing a separate entity seems to have been withheld. In such a state of facts at least, we see no occasion to depart from Looney v. Stryker, supra.

Concluding that this is a suit against the state, we come to appellant's second proposition, that the state has consented to it.

He first points to certain statutory provisions as evidencing such consent. He then invokes N. M. Constitution, art. 2, § 20, reading, "Private property shall not be taken or damaged for public use without just compensation." This provision, he says, is self-executing, and necessarily implies consent that the state may be sued by a citizen for damage to his property for a public use.

We find it inconvenient to keep these two points separate. We think that we do no injustice to appellant's able argument to re-

state his contention thus: The Constitution itself confers on plaintiff the right to sue. But if the court should hesitate to admit this, it will find that the Legislature has consented by its statutory policy in respect to the taking and damaging of private property for road purposes.

The statutory provisions are 1929 Comp. St. §§ 43-115, 43-111, and 64-303(e). Section 43-115 authorizes the state to condemn private property for public use for roads. Section 43-111 reads: "In case property is to be, will be, or has been by any corporation damaged for public use, any person interested may have such damages ascertained. The proceedings for ascertaining and paying such damages shall be the same as are and may be provided by law for assessing damages which owners of land may sustain in consequence of its appropriation for railroad purposes." Section 64-303(e) authorizes the highway commission, in the state's name, to proceed in condemnation for roads, and provides for payment of the damages assessed.

We do not question that appellant, alleging damage to his property consequent upon construction of a state highway, exhibits a constitutional right to just compensation. That this constitutional provision is generally self-executing we admit. We so held in Summerford v. Board, 35 N. M. 374, 298 P. 410. There we found the property owner's right in the Constitution, and his remedy in the ordinary civil action. But we there found a defendant capable of being sued, admitting

liability. Here appellant seeks to impose liability upon the state.

Many cases cited by appellant do not involve the right to sue the state, either directly or indirectly through a noncorporate arm or agency. They go no farther than the Summerford Case. But some cases do; evincing, more often perhaps by their language than by what they decide, a disposition to sacrifice the salutary doctrine of the state's immunity from suit, in the interest of the injured citizen.

The basic argument of such cases, and that stressed by appellant, is that unless the state can thus be reached, a citizen will be without redress for the invasion of his constitutional right. This flatly challenges state immunity from suit. The doctrine necessarily presupposes that very result, so far as judicial remedies are concerned.

The argument also ignores the political remedy, which, after all, is the sole recourse of the citizen in many cases. If the state's immunity from suit were looked upon as license to the state to violate the Constitution and do injury to its citizens, it would be immoral and insufferable. It is justified by the fact that the Constitution is binding on the conscience of all branches of the government and that the Legislature as well as the courts may be looked to for justice.

Both legally and practically we consider the state's immunity from suit too important a matter to be trifled with. "A sovereign is exempt from suit, not because of any formal

conception of obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." Mr. Justice Holmes, in Kawananakoa v. Polyblank, 205 U. S. 349, 27 S. Ct. 526, 527, 51 L. Ed. 834. The Legislature, not to mention the courts, should proceed slowly and with caution in subjecting the state itself to the exigencies of litigation. Langford v. U. S., 101 U. S. (11 Otto) 341, 25 L. Ed. 1010.

■■ Moreover, a question of jurisdiction arises. This court is the creature of the sovereign state. It can have no natural or presumptive jurisdiction over its creator. Such jurisdiction as we have over the state we must trace to the Constitution or to that branch of government which declares the state's public policy. In the absence of plain consent, to entertain a suit against the state is judicial usurpation.

■ Furthermore, "It is usually said that statutes authorizing suits against the state are to be strictly construed, since they are in derogation of the state's sovereignty." 59 C. J. 303, 25 R. C. L. 416, Lewis' Sutherland, St. Const. (2d Ed.) § 558.

■ It will not do to say that because the state claims the right to proceed in condemnation, it impliedly consents to be sued in case its rightful use of the property taken results in consequential damage to property not taken. The right of the state to sue in its own courts has always stood side by side

with its right not to be sued. Legislative authorization to a state arm or agency to enter into a contract with a citizen in the state's name has seemed to some judges sufficient to imply a consent to a suit against the state or its agency for a breach of it. We do not so understand. The state, as a contracting party, pledges its faith and credit; no more.

The practical necessity back of these legal distinctions is too plain to require exposition. The state must be permitted generally to pursue its governing and business functions free from interference by its courts. Its Legislature may, indeed, make such provision for suits as its wisdom suggests. It will surround the jurisdiction with such restrictions as public policy may seem to require. A familiar instance is the limited jurisdiction of courts of claims.

The Legislature may also deem it wise, as to some of its business, to intrust it to an arm or agency with power to acquire and hold title to property, to make contracts in its own name, and to sue and be sued. The business may still be essentially that of the state. Nevertheless it ceases to be such in legal contemplation, to the extent that the citizen may then have judicial remedies. Locke v. Board of Trustees, supra.

The Legislature might easily have constituted the highway commission a corporation. The fact that it did not, but requires it to contract, take title, and sue in the state's name, is strongly suggestive of a deliberate

policy to conduct the business of constructing and maintaining highways on the faith and credit of the state, and not upon the legal responsibility of a corporation.

 Section 43-111, supra, authorizes a special proceeding for "ascertaining and paying * * * damages" when property "has been by any corporation damaged for public use." Though appellant, by much of his argument, endeavors to establish the right to an ordinary civil action, the third prayer of his complaint shows an attempt to have his damages ascertained under this section. Only by the most liberal construction could "any corporation" be held to include the state or its non-corporate agency, the commission.

Because section 43-111 is found in the chapter on eminent domain, appellant would have it mean "any corporation hereby authorized to proceed in condemnation." Then he contends that the state should be deemed such a corporation because, as amended in 1929, section 43-115 now authorizes the state to proceed in condemnation to acquire property for roads. We do not think either that the Legislature had any such intent, or that sound principles of interpretation warrant us in attributing it.

We have said so much because of appellant's insistence upon his remediless situation as against an invasion of his constitutional right—a matter to which no court should turn a deaf ear. We are warned, however, that one branch of government may not safely or wisely carry its zeal for the rights of the citizen so far as to encroach upon the functions of a co-ordinate branch. The courts cannot act in a case like this without impairing or destroying the salutary immunity from suit. The Legislature can act in the particular case or by general provision, and with proper regard for the public interest. The Legislature is no doubt as sensitive to injustice as the courts. By unsound or specious reasoning we might arrive at rough justice in a particular case. More often we could do nothing. It is better that all understand that the legislative responsibility is undivided.

We have not thought it necessary to support these principles by citations at large. We deem them well established in this jurisdiction. In addition to the New Mexico cases already cited, American Trust & Savings Bank v. Scobee, 29 N. M. 436, 224 P. 788, may be noted.

Nor do we take space to review the decisions relied on by appellant. In addition to those already noted, we may mention Board of Councilmen of City of Frankfort v. State Highway Commission, 236 Ky. 253, 32 S.W. (2d) 1008; Chick Springs Water Co., Inc., v. State Highway Department, 159 S. C. 481, 157 S. E. 842; Great Northern Ry. Co. v. State of Washington, 102 Wash. 348, 173 P. 40, L. R. A. 1918E, 987; State v. Ward, 9 Heisk. (Tenn.) 100; Arkansas State Highway Commission v. Dodge, 181 Ark. 539, 26 S. W. (2d) 879.

It being our conclusion that the learned district judge properly sustained the demurrer, the judgment will be affirmed, and the cause remanded. It is so ordered.

SADLER, HUDSPETH, and BICKLEY, JJ., concur.

ZINN, J., did not participate.