James A. Thomas, a Minor, by Wilbur Thomas, his
Father and Next Friend, Plaintiff-Appellant, v.
Broadlands Community Consolidated School Dis-
trict Number 201, Defendant-Appellee.

Gen. No. 9,845.

Opinion filed November 14,
1952. Rehearing denied January 12, 1953. Released for publication
January 12, 1953.

C. E. Tate, of Champaign, for appellant.

John Alan Appleman, of Urbana, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

The questions involved in this appeal are presented in an agreed case pursuant to Supreme Court Rule 48 (ch. 110, sec. 259.48, Ill. Rev. Stat. 1951 [Jones Ill. Stats. Ann. 105.48]). The agreed statement of the case so far as material is as follows:

The plaintiff, a minor, sued, through his father as next friend for personal injuries received by him on October 4, 1950, while a student upon the playground, at the recess of the defendant, alleging negligence upon the part of defendant's agents, causing the loss of an eye to plaintiff. Defendant was organized upon May 18, 1946, under Illinois Revised Statutes, chapter 122, article 8 [par. 8–1, Jones Ill. Stats. Ann. 123.850], as a Community Consolidated School District. The complaint alleged the carrying of liability insurance by defendant in an amount sufficient to pay any judgment recovered, and offered to limit collection of any judgment to the proceeds of such insurance policy. The defendant filed a motion to dismiss the complaint upon the ground that the defendant was created *nolen volens* by general law as a quasi-municipal corporation and as such is a part of the State of Illinois exercising governmental functions and not liable for the acts or negligence of its servants and agents. Upon June 15th, 1951, the trial court sustained the motion to dismiss and, the plaintiff electing to abide by his complaint, final judgment was entered upon December 20, 1951, in favor of the defendant and for costs. The following questions were certified by the trial court and counsel for the

respective parties to be the only questions of law to be determined upon this appeal:

1. Is the defendant immune from suit for negligence in this case?

2. If immunity exists, does the carrying of liability insurance remove this immunity either completely or to the extent of such insurance?

■ The decision upon the first question of law presented is free from complexity. Absent the question of insurance, the law in Illinois is clear that a School District, as a quasi-municipal corporation, is not liable for injuries resulting from tort. *Kinnare v. City of Chicago*, 171 Ill. 332; *Leviton v. Board of Education*, 374 Ill. 594; *Lincke v. Moline Board of Education*, 245 Ill. App. 459; *Edward J. Berwind, Inc. v. Chicago Park District*, 393 Ill. 317. We do not understand that plaintiff seriously contends the law is otherwise..

Does the liability insurance in force in behalf of the School District remove its immunity either totally or *pro tanto*? The answer to that question involves not only an analysis of decisions of this State, but also a research into the bases of the doctrine of governmental immunity.

It is the plaintiff's initial contention that *Moore v. Moyle*, 405 Ill. 555 is, by analogy, decisive of this case. In the *Moore* case, *supra*, the Supreme Court of this State held that a complaint against a defendant charitable institution, alleged to be fully insured, so that a judgment, if obtained in a tort action, would not impair or diminish any funds held by the institution in trust for its charitable purposes, stated a cause of action. In that decision, the court concluded that the sole object of the doctrine of immunity of charitable corporations from suit for tort was to protect trust funds of charities from depletion through the tortious conduct of their employees and agents. The court indicated that the immunity granted to charitable corporations was

569

not an absolute one and that such an immunity might be waived. The court concluded that there was no intention shown in the previous decisions by it to extend the immunity granted to non-trust funds of the charity, and in holding that the plaintiff's complaint stated a cause of action against the charity, said on pages 565–566:

*"We are of the opinion there is no justification for absolute immunity if the trust is protected, because that has been the reason for the rule of absolute immunity.* Reason and justice require an extension of the rule in an attempt to inject some humanitarian principles into the abstract rule of absolute immunity. The law is not static and must follow and conform to changing conditions and new trends in human relations to justify its existence as a servant and protector of the people and, when necessary, new remedies must be applied where none exist." (Italics supplied.)

We note that the doctrines of charitable immunity have had considerable effect on the doctrines pertaining to municipal immunity. The charity cases, as in the *Moore* case, *supra,* have often turned on the "trust fund" theory. In a scholarly and exhaustive article entitled "Municipal Tort Liability in Operation," 54 Harv. L. Rev., 437–441, Professors Fuller and Casner state that although of decreasing importance, the doctrines of charitable tort immunity have often been closely associated with that of governmental function when the charitable activities were undertaken by public authorities. Thus law first intended for private charities has influenced branches of the public services.

It is thus apparent that if the *Moore* case, *supra,* is to be persuasive in this case, as plaintiff contends it should be, that liability insurance must affect the basis or the reason for immunity of quasi-municipal corporations from suit for tort in a manner substantially similar to that in which the reason for charitable im-

570

munity was so influenced. The *Moore* case, *supra,* held that a charity might be sued. Does insurance destroy the reason for a quasi corporation's immunity from suit?

Defendant contends not. Defendant states that there is no question concerning trust funds or their invasion where a governmental unit is sued for tort. Defendant's contention is that the basis of governmental immunity is that the state may not be sued without its consent whether it carries insurance or not.

As to quasi-municipal corporations, such as defendant, as we have stated above, the rule is in Illinois, that they are not liable for tort. The reason for the immunity is succinctly stated by the Supreme Court in the *Leviton* case, *supra,* when it quoted from *Elmore v. Drainage Com'rs,* 135 Ill. 269, at pp. 599–600:

" 'The non-liability of the public *quasi* corporation, unless liability is expressly declared, is usually placed upon these grounds: That the corporators are made such *nolens volens,* that their powers are limited and specific, *and that no corporate funds are provided which can, without express provision of law, be appropriated to private indemnification.* Consequently, in such case, the liability is one of imperfect obligation, and no civil action lies at the suit of an individual for non-performance of the duty imposed.' " (Italics supplied.)

Text writers and at least one other case in Illinois have founded immunity upon the involuntary nature of the corporation, or upon the fact that in such a corporation its duties are wholly governmental in nature, that it is thus acting as an arm of the State which does not submit its action to the judgments of courts and since the quasi corporation is but a mere agent of the State it is likewise exempted. *18 McQuillin, Municipal*

571

*Corporations,* sec. 53.05, p. 151; *Lincke v. Moline Board of Education, supra,* pages 462–463.

We are not unmindful of the distinction between a quasi-municipal corporation and a municipal corporation. A discussion of the cases involving municipal corporations exercising governmental functions is in point for the reason that in such cases municipal corporations are likewise acting as an arm of the State, and thus the reasons for immunity are the same as in the quasi-municipal corporation.

■ The rule is, in regard to governmental functions of a municipal corporation, that no private action for tort will lie against the State since negligence cannot be imputed to the sovereign.

Defendant asserts in its brief that the basis for governmental immunity is that a State or subdivision thereof cannot be sued without its consent. In this defendant is only partially correct, for it has stated the rule and not the reason for the rule.

■ The reasons for that rule are something else. As stated by McQuillin:

"The doctrine . . . is based on the familiar reason that the undertaking is not to promote the private interests of the municipality as a corporate entity, but rather for the public benefit, and in the performance of such obligation the municipality is a mere public agent, either of the state or of the local community. *The reason, as often expressed, is one of public policy, to protect public funds and public property.* 'Taxes are raised for certain specific governmental purposes; and if they could be diverted to the payment of damage claims, the more important work of government, which every municipality must perform regardless of its other relations, would be seriously impaired if not totally destroyed. The reason for the exemption is sound and unobjectionable . . . '" (italics supplied). 18 McQuillin, *supra,* sec. 53.24.

572

The other basis for the rule of non-liability has been called a "survival of the medieval idea that the sovereign power can do no wrong," or that "the King can do no wrong." 38 Am. Jur. Mun. Corps., sec. 573, p. 266. Text writers call this "the principle," with the reason therefor assigned in the earlier cases being that it is better for the individual to suffer than for the public to be inconvenienced, and in the later cases on grounds of public policy which seeks to prevent public funds and public property from being diverted from public uses and applied to the liquidation of private damages.

These reasons of immunity afforded a municipal corporation are of long standing but have, with one exception, no basis in the first case deciding the point. As stated in the article in 54 Harv. L. Rev., 438, 440, the rule of immunity of a municipal corporation for tort stems from the case of *Russell v. Men of Devon*, 2 Durn. & East 667, 100 Eng. Rep. 359 (1788), where no corporation, in fact, existed to be sued. In that case one of the principal reasons relied upon for immunity to suit was the lack of a corporate fund in Devonshire. The immunity of the sovereign was not mentioned in the *Russell* case, *supra,* and the other grounds for the decision have been called questionable. It was not until *stare decisis* had done its work that the doctrine of sovereign immunity was introduced as a rationalization of the result. The *Russell* case, *supra,* was cited and relied upon in one of the earliest cases in Illinois involving municipal liability for tort, *Browning v. City of Springfield,* 17 Ill. 143.

From the cases and texts examined, a full citation of which would unnecessarily burden this opinion, it must be concluded that the reasons for quasi-municipal and municipal-corporate immunity from suit for tort are principally two : that the "King can do no wrong," or modernly that the State, being the sovereign, cannot

be sued without its consent; and the reason that public policy to protect the public funds has decreed that corporate moneys devoted to governmental purposes should not be diverted to the payment of tort judgments. It must be further concluded that there is no historical basis for the rule of sovereign immunity as applied to municipal and quasi-municipal corporations.

■ Immunity of a municipal corporation cannot be justified upon the theory that the King can do no wrong, or any paraphrase thereof. Such a justification does not lend itself to the age in which we live, and its harsh consequences to society condemn it.

"The whole doctrine of governmental immunity from liability for tort rests upon a rotten foundation. It is almost incredible that in this modern age of comparative sociological enlightenment, and in a republic, the medieval absolutism supposed to be implicit in the maxim, 'the King can do no wrong,' should exempt the various branches of the government from liability for their torts, and that the entire burden of damage resulting from the wrongful acts of the government should be imposed upon the single individual who suffers the injury, rather than distributed among the entire community constituting the government, where it could be borne without hardship upon any individual, and where it justly belongs." *Barker v. City of Santa Fe,* 47 N. M. 85, 136 P. (2d) 480, at page 482, citing 75 A. L. R. 1196.

The modern paraphrase of this harsh rule is, as noted above, that since a quasi-municipal corporation is an agent of the State, hence that a suit against the corporation is in effect a suit against the State. The Harvard Law Review article, *supra,* p. 439, in further discussing the problem says:

"It seems, however, a prostitution of the concept of sovereign immunity to extend its scope in this way,

for no one could seriously contend that local governmental units possess sovereign powers themselves."

The many exceptions to such governmental immunity such as the tenuous distinctions drawn between governmental and corporate functions, also make it clear that the immunity-producing quality is independent of the inherent nature of the municipal corporation.

There are other unsound reasons for the rule occasionally advanced and refuted, which we need not discuss. See: Smith "Municipal Tort Liability," 48 Mich. L. Rev. 41, 48–54. The only justifiable reason for the immunity of quasi-municipal corporations from suit for tort is the sound and unobjectionable one that it is the public policy to protect public funds and public property, to prevent the diversion of tax moneys, in this case school funds, to the payment of damage claims. There is no justification or reason for absolute immunity if the public funds are protected. Their protection has been the real and historical reason for the absolute immunity both elsewhere and in Illinois accorded quasi-municipal corporations, and similarly, municipal corporations in the exercise of a governmental function. Liability insurance, to the extent that it protects the public funds, removes the reason for, and thus the immunity to, suit. The reasoning of the Supreme Court in the *Moore* case, *supra*, applies with equal force to the question before us. If the public funds are protected by liability insurance, the justification and reason for the rule of immunity are removed.

■ Defendant, however, contends that there is no statutory authorization in Illinois for the carrying of an insurance policy by a School District which could result in the waiver of governmental immunity in such a situation. In effect defendant seeks to assert its own illegal act in procuring the insurance as a defense. We

575

need not decide the question of waiver because immunity from tort liability of a quasi-municipal corporation is required or justified by the need for the protection of the public funds, and when liability insurance is available to so protect the public funds, the reason for the rule of immunity vanishes to the extent of the available insurance.

For the reasons stated the judgment of the trial court is reversed and the case is remanded.

*Reversed and remanded.*