Lela Irene MAFFEI and Lela Irene Maffei, Guardian Ad-Litem of Charles Albert Maffei, Carol Irene Maffei and John Jay Maffei, Minors, Appellants (Plaintiffs below),

v.

INCORPORATED TOWN OF KEMMERER,

Wyoming, Appellee (Defendant below).

No. 2843.

Supreme Court of Wyoming.

April 21, 1959.

338 Pac.2d 808

Lee S. Nebeker, Green River, and Richard L. Bird, Jr., and C. J. Frost, Salt Lake City, Utah, for appellants.

Edgar J. Herschler, Kemmerer, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

38

## OPINION.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Plaintiffs alleged the town brought about the death of their husband and father through negligence of its police officer in directing deceased to assist him in the pursuit of a felon without warning deceased of the dangerous nature of the pursuit and that defendant's procuring liability insurance which required the insurer not to deny liability on account of municipal immunity except upon written request of the town (which was not made) waived the town's municipal immunity. When defendant's demurrer was sustained plaintiffs elected to stand upon their pleading. The case was dismissed and plaintiffs appeal.

By claiming there was a waiver of municipal immunity, the plaintiffs tacitly conceded the town did possess an immunity. Notwithstanding, we will discuss that matter at some length. In addition appellants ask us to decide: (1) If the insurance company was estopped to plead immunity; (2) if plaintiffs have an action as third-party beneficiaries under the insurance contract; (3) if the immunity question could be raised by demurrer.

The appellee says a cause of action was not stated because: (1) There was a failure to plead whether the town was acting in governmental or proprietary capacity; (2) in the absence of statute, the town is immune from liability when exercising its governmental function; and (3) the town cannot waive its immunity by procurement of insurance.

As many of these various contentions will be discussed as are deemed best suited to disposition of the case.

Although our decision in Savage v. Town of Lander, 77 Wyo. 157, 164, 165, 309 P.2d 152, 153, 154, indicated that good pleading requires alleging the capacity in which the town acted, the facts set forth in the instant case sufficiently disclosed the town had acted in a purely governmental capacity and appellants do not assert otherwise. This being so, the further statement in the Savage case has bearing:

"Any analysis of an action for personal injury against a town must be considered in the true legal perspective governing the tort liability of a municipality—as distinguished from a private corporation or an individual. The law on this subject is too well settled to admit of serious controversy. A municipal corporation has a dual nature or capacity, one public, and the other private, and exercises twofold functions and duties. The rule is generally recognized that in the absence of statutory provision there can be no recovery against a municipal corporation for injuries occasioned by its negligence or nonfeasance in the exercise of a function which is essentially governmental in character. * * *"

This last sentence, which merely voiced a well-recognized rule of law, undoubtedly committed us to accept-

ance of the doctrine of municipal immunity, absent a statutory provision to the contrary. Now, this appeal directly challenges us to renounce this generally recognized doctrine of municipal immunity and to judicially declare that what is said to be a modern and better public policy is the law of this State. This we may not do.

In the first place, appellants cite us no authorities directly in point to support their contention. The only case in point we have discovered to support the theory that a court is privileged to repudiate the general rule giving immunity to towns from liablity for tort is Hargrove v. Town of Cocoa Beach, 1957, Fla., 96 So.2d 130, 60 A.L.R.2d 1193. There it was claimed that any recession from the court's prior decisions holding municipal corporations immune from liability for torts of police officers and making towns liable for such torts under the doctrine of respondeat superior must come from legislative rather than from judicial action. The court was of divided opinion but the majority in direct and forceful language rejected the thought. The majority decision, however, would be much more persuasive were it not that we believe the learned court proceeded upon an unfirm premise. The opinion writer at page 132 in 96 So. 2d and at page 1196 in 60 A.L.R. 2d said:

"Tracing the rule [doctrine of municipal immunity] to its ultimate progenitor we are led to the English case of Russell v. Men of Devon, 2 T. R. 667, 100 Eng.Rep.R. 359 (1788). * * *"

The court then stated:

"Assuming that the immunity rule had its inception in the Men of Devon case, and most legal

historians agree that it did, it should be noted that this case was decided in 1788, some twelve years after our Declaration of Independence. Be that as it may, our own feeling is that the courts should be alive to the demands of justice. We can see no necessity for insisting on legislative action in a matter *which the courts themselves originated.*" (Emphasis supplied.) Hargrove v. Town of Cocoa Beach, Fla., 96 So.2d 130, 132, 60 A.L.R.2d 1193, 1196.

We interpret these expressions as meaning the Florida court considered the doctrine of municipal immunity originated by virtue of pronouncement made in Russell v. The Men of Devon, 2 T.R. 667, 100 Eng. Rep.R. 359. We believe that assumption is not justified because of what was said in the opinion in the Devon case, which was an action in which an individual sought recovery against the inhabitants of a county for injuries sustained because of alleged negligence of the county. In the major opinion at 2 T.R. 673, 100 Eng.Rep.R. 362 it was said:

"* * * there is no law or reason for supporting the action; and there is a *precedent against it in Brooke*: though even without that *authority* I should be of opinion that this action cannot be maintained." (Emphasis supplied.)

To the same effect the concurring opinion said at 2 T.R. 673, 100 Eng.Rep.R. 363:

"* * * However there is no foundation on which this action can be supported; and if it had been intended, the *Legislature* would have interfered and given a remedy, as they did the case of hue and cry. Thus this case stands on principle: but I think *the case cited from Brooke's Abridgment is a direct authority* to shew that no such action could be maintained; and the reason of *that case*

is a good one, namely because the action must be brought against the public." (Emphasis supplied.)

While we have been unable to find the full report of the case abridged by Brooke, the language used by the opinion writers in the Devon case clearly indicates that antecedent to Russell v. The Men of Devon, supra, a previous judicial pronouncement had recognized the doctrine of municipal immunity. We do find, however, in II Holdsworth's History of English Law, 3d ed., p. 545, a reference stating the author of Brooke's Abridgments died in 1558. So it is clear the early decision Brooke abridged was made before that year.

We have also procured from the Lawyers Co-operative Publishing Company a photographic reproduction of the digest of the case as it appears in the editor's 1586 edition of Brooke's "La Graunde Abridgment", as well as a photographic reproduction of the report itself as it appears in the 1680 edition of Year Book, Easter 5 Edward IV 2, pl. 24. Both of these seem to be written in medieval French. A careful and studied translation of these documents coincides substantially with the meaning ascribed to them by one of counsel in the Devon case, 2 T.R. 669, 100 Eng.Rep.R. 360, who represented it to be as follows:

"* * * if an highway be out of repair by which my horse is mired, no action lies, 'car est populus et surra reforme per presentment;' which must be understood to mean, that, as the road ought to be repaired by the public, no individual can maintain an action against them for any injury arising from their neglect."

Section 16-301, W.C.S.1945, says the Common Law of England prior to the fourth year of James I (1607)

"shall be the rule of decision in this state." Thus by statute the doctrine of municipal immunity became the rule of decision in our State and it is only by statute that the doctrine should be abrogated.

Under these circumstances we are not free to accept the Florida court's theory as stated in Hargrove v. Town of Cocoa Beach, supra, and abolish the doctrine by judicial decree. Nor are we prepared to go along with the Florida court's assumption that the 1788 judicial recognition of the common law of England amounted to a court-originated doctrine. It seems more logical to conclude the doctrine was already a part of the common law, engrafted therein through long usage and custom.

In 38 Am.Jur., Municipal Corporations, § 573, p. 265, it is said:

> "Following the decision in Russell v. Devon County, it became a settled principle of the common law that an individual could not maintain an action against a political subdivision of the state for injury resulting from negligence in the performance of any governmental function. * * *"

We cannot say the statement is inaccurate, although it might well be noted that the opinions in the Devon case only gave recognition to a principle which had been applied in an earlier decision rendered at least prior to 1558 in which the same doctrine was announced.

In the same volume of 38 Am.Jur. Municipal Corporations, § 620, pp. 317-319, instances are given where the doctrine of municipal immunity has been upheld. These included saying at page 319:

"\* \* \* Likewise, a municipal corporation is not liable for a personal injury incurred by a citizen who was called upon by police officers to assist them in making an arrest. \* \* \*"

At page 320, it is said:

"The modern tendency is against the rule of nonliability of municipal corporations for the acts of their policemen, \* \* \*

citing Evans v. Berry, 236 App.Div. 334, 258 N.Y.S. 473; 262 N.Y. 61, 186 N.E. 203, 89 A.L.R. 387, and in a footnote says:

"The tendency to *apply* the rule of respondeat superior has been noted with approval in articles by Professor Borchard entitled 'Governmental Responsibility in Tort' (28 Columbia L.Rev. pp. 577, 735), and 'Government Liability in Tort' (34 Yale L.J. 229, 240), and in a note on 'Municipal Responsibility for the Torts of Policemen' (42 Yale L.J. 241); an article by the late Attorney General Hamilton Ward on 'Municipal Liability' (Vol. 2, No. 7 [Sept. 1930] N. Y. State Bar Asso. Bulletin, p. 402); a note in 16 Cornell Law Quarterly, 359; and 'The Extension of Municipal Liability in Tort' by Charles W. Tooke (19 Virginia L.Rev. 97)." (Emphasis supplied.)

Assuming that the "modern tendency" referred to means that courts are disposed to apply the rule of respondeat superior in actions against municipalities, we examine the authorities cited.

In Evans v. Berry, supra, the State of New York had conferred "home rule" upon the city, granting it legislative powers. Exercising this legislative power the city expressly waived its municipal immunity. In consequence, the decision rested solely upon the legis-

lative action taken rather than in judicial decree discarding the doctrine of municipal immunity. The case does not, therefore, support the conclusion that modern judicial tendency is away from the immunity.

Borchard's writing in 28 Colum.L.Rev. 577, 603, dwells at length upon the desirability of abrogating the doctrine of municipal immunity, but says:

> "* * * In England and the United States, statute alone can abolish the anachronisms of Kings that do no wrong and States that are above the law and cannot even be sued. * * *"

Nowhere does the author claim it is modern tendency of *courts* to abolish the rule of nonliability of municipal corporations. The same writer in 34 Yale L.J. 229, 240, says flatly:

> "With respect to the torts of police officers, there is an unusual degree of unanimity against municipal liability. * * *"

The article in 42 Yale L.J. 241 contains nothing to support the statement.

The article of the New York State Attorney General in Vol. 2, No. 7, N.Y.S.B.A. Bull, 402, Sept. 1930, only advocates legislative action to remove governmental immunity, and similarly the article in 16 Cornell L.Q. 359 deals only with legislative action. Neither article indicates any modern tendency of courts.

The writing of Charles W. Tooke in 19 Va.L.Rev. 97, 106, says:

> "* * * as many activities, now classed as governmental, are put upon a self-liquidating basis, the

courts may reclassify these enterprises as proprietary in order to subject their conduct to the ordinary rules of civil liability. *But beyond these limits even the more progressive courts do not feel justified in going. * * *"* (Emphasis supplied.)

The author notes the Supreme Court of Ohio abandoned governmental and proprietary classification, in the case of Fowler v. City of Cleveland, 1919, 100 Ohio St. 158, 126 N.E. 72, 9 A.L.R. 131, and this was followed in Kaufman v. City of Tallahassee, 1922, 84 Fla. 634, 94 So. 697, 30 A.L.R. 471. But Ohio in 1922 in Aldrich v. City of Youngstown, 106 Ohio St. 342, 140 N.E. 164, 27 A.L.R. 1497, repudiated the Fowler decision although Florida in City of Tallahassee v. Kaufman, 87 Fla. 119, 100 So. 150 in 1924 persisted in its former opinion.

Following this recount, the writer says:

"With the exception of these jurisdictions, the courts of no state have felt at liberty to abandon the prevailing doctrine of the immunity of municipal corporations for the negligence of their officers and agents in performing governmental functions. The courts fully recognize the difficulty of adjusting the doctrine to the now prevailing principle of the complete subordination of municipal corporations to the legislative will in all matters that are of general state concern. * * *" 19 Va.L.Rev. 97, 107.

\*      \*      \*      \*      \*      \*

"* * * While they [the courts] may admit the glaring defects in the present law, they feel that any changes that should be made must be left to the wisdom of the legislature. As expressed by

the Supreme Court of Kansas [McGraw v. Rural High School Dist. No. 1, Linn County, 120 Kan. 413, 414, 243 P. 1038, 1039]:

" 'If the doctrine of state immunity in tort survives by virtue of antiquity alone, is an historical anachronism, manifests an inefficient public policy and works injustice to everybody concerned, * * * the Legislature should abrogate it. But the *Legislature must make the change in policy, not the courts.*' " (Emphasis supplied.) 19 Va.L.Rev. 97, 108.

The very writings which are advanced as authority are in essence in disagreement with the statement that the modern tendency is against the rule of nonliability of municipal corporations.

Appellants, like some courts, seem to feel that decisions holding certain charitable institutions are stripped of their immunity by purchase of insurance are determinative of the liability of municipalities which have bought insurance.

Appellants also place great reliance upon Thomas v. Broadlands Community Consolidated School Dist., 348 Ill.App. 567, 109 N.E.2d 636 (Nov.1952), where it is said the reasoning in Moore v. Moyle, 1950, 405 Ill. 555, 92 N.E.2d 81, a suit against a charitable institution which carried insurance, applied with equal force to the case then before the court. It might be well to look into the development of Illinois law regarding these immunities. In the early case (1905) of Parks v. Northwestern University, 218 Ill. 381, 75 N.E. 991, 993, 2 L.R.A.,N.S., 556, 4 Ann.Cas. 103, liability was sought to be imposed upon the University, a private charitable corporation, for negligent acts of its professor which resulted in injury to a student.

The court there gave recognition to the doctrine that counties and towns, in performance of governmental functions, are not subject to the doctrine of respondeat superior respecting delinquencies of their agents or officers for the reason those municipalities are arms of the state and the nonliability of sovereignty covered them. The opinion then said:

"* * * But the exemption according to charitable institutions does not rest alone on the doctrine that the state or the sovereign is not liable for the acts of its servants. The doctrine of respondeat superior does not extend to charitable institutions for the reasons, 'first, that if this liability were admitted the trust fund might be wholly destroyed and diverted from the purpose for which it was given, thus thwarting the donor's intent, as the result of negligence for which he was in no wise responsible; second, that since the trustees cannot divert the funds by their direct act, from the purposes for which they were donated, such funds cannot be indirectly diverted by the tortious or negligent acts of the managers of the funds or their agents or employees.' 5 Am. & Eng. Ency. of Law (2d Ed.) 923. * * *" Parks v. Northwestern University, 218 Ill. 381, 75 N.E. 991, 993, 2 L.R.A.,N.S., 556, 4 Ann.Cas. 103.

This amounts to saying a *charitable institution* is not exempt from liability for tort but its *trust funds* are.

In Moore v. Moyle, 405 Ill. 555, 92 N.E. 2d 81, where recovery was sought against a Polytechnic Institute, a charitable institution, on whose equipment plaintiff had been injured, after noting the Parks decision had been followed in other decisions of that state, a divided court held that while generally trust funds of a charitable institution are exempt from liability for torts of its agents and employees, such im-

munity did not impose a disability to be sued in tort and mentioned that in Vanderbilt University v. Henderson, 23 Tenn.App. 135, 127 S.W.2d 284, 287, the court gave approval to the idea that the exemption and protection afforded was not an immunity from suit or of nonliability for tort, but protection for trust funds. The majority also held that beyond giving protective immunity to trust funds of a charitable corporation, the rule of respondeat superior obtained and tort action would lie against a charitable institution when, *by reason of insurance,* liability would not impair or deplete trust funds. But the Moore case, supra [405 Ill. 555, 92 N.E.2d 86], also says the carrying of insurance by a charitable institution "in no way affects its liability" and that the presence of insurance was only of importance when effort was made to collect a judgment from nontrust property or assets, i.e., as from an insurer. This presents something of a puzzle. If insurance is of importance *only* when effort is made to collect from an insurer— not a party to the action and hence not subject to the judgment or execution thereon—the test of a court's jurisdiction to entertain a suit against the charitable institution not only comes *after* a judgment is rendered against it but comes in a proceeding to collect from a stranger to the suit. This is something entirely new in jurisprudence.

The final conclusion of the majority in the Moore case, supra, was that it is the law of Illinois:

"* * * that the trust funds of charitable corporations are immune from liablity for the torts of the corporation's employees and agents. Beyond that, the rule of *respondeat superior* is in effect."
Moore v. Moyle, 405 Ill. 555, 92 N.E.2d 81, 87.

The opinion of one of the two justices who dissented points out clearly that the Parks decision, supra, was:

"* * * not merely that the assets of the university were exempt from execution on the judgment but that plaintiff was *barred* from recovering * * *. If, therefore, this court is now holding that the presence of unprotected assets does not affect liability—in other words, that judgment must be rendered on the merits regardless of the charitable nature of the defendant institution—it is difficult to see how the present holding can possibly be reconciled with that of the Parks case. Moreover, the question presumably of controlling importance, namely the manner in which a judgment can be collected or enforced, is not before the court in the present state of the record. The issue to be determined is whether defendant is immune from liability, not whether a liability reduced to judgment can be subsequently satisfied from assets held by the institution." (Emphasis supplied.) Moore v. Moyle, 405 Ill. 555, 92 N.E.2d 81, 87.

In Thomas v. Broadlands Community Consolidated School Dist., 348 Ill.App. 567, 109 N.E.2d 636, damages had been claimed against a school district, said to be a quasi-municipality, for injuries caused by its alleged negligence. There, as in the instant case, it was contended the carrying of liability insurance removed whatever immunity the district might possess as a quasi-municipal corporation. Without discussion it was held that absent insurance the district was not liable for injuries resulting from tort. But the court said that the decision in the Moore case, supra, applied with equal force and, therefore, the trial court's dismissal of the action on defendant's motion was reversed. The analogy relied upon was that the policy of protecting against diversion of public funds from the purpose for which they were intended in the Broad-

lands case, supra, corresponded to the policy of protecting the trust funds of a charitable institution in the Moore case, supra, for the court said:

"* * * The only justifiable reason for the immunity of quasi-municipal corporations from suit for tort is the sound and unobjectionable one that it is the public policy to protect public funds and public property, to prevent the diversion of tax moneys in this case school funds to the payment of damage claims. There is no justification or reason for absolute immunity *if the public funds are protected.* * * *" (Emphasis supplied.) Thomas v. Broadlands Community Consolidated School Dist., 348 Ill. App. 567, 109 N.E.2d 636, 640.

The court attempted to bolster its decision with the following quotation in Barker v. City of Santa Fe, 47 N.M. 85, 136 P.2d 480, 482, taken from the annotator's statement in 75 A.L.R. 1196:

" 'The whole doctrine of governmental immunity from liability for tort rests upon a rotten foundation. It is almost incredible that in this modern age of comparative sociological enlightenment, and in a republic, the medieval absolutism supposed to be implicit in the maxim, "the King can do no wrong", should exempt the various branches of government from liability for their torts, * * *.' " See Broadlands case, supra, 109 N.E. 2d 636, 640.

and quotation from 54 Harv.LRev. 437, 439:

" 'It seems, however, a prostitution of the concept of sovereign immunity to extend its scope in this way, for no one could seriously contend that local governmental units possess sovereign powers themselves.' " See Broadlands case, supra, 109 N.E.2d 636, 640.

The harsh language thus used adds nothing of persuasiveness. It rather serves to emphasize the impropriety of courts of law assuming to base their decisions on their own concept of "sociological enlightment" rather than await legislative reaction to such claimed modern advancement. It is important to know that a later decision of the New Mexico court in Livingston v. Regents of New Mexico College of Agriculture & Mechanic Arts, 64 N.M. 306, 328 P.2d 78, 82 (July, 1958), resolves the New Mexico position on the subject, saying:

> "We admit that the logic of appellants' argument might very well justify a change in the public policy of this jurisdiction. We feel, however, that the appellants' argument should be addressed to the legislature and not to this court. In Dougherty v. Vidal, 37 N.M. 256, 21 P.2d 90, 93, this court said:

> " '* * * We are warned, however, that one branch of government may not safely or wisely carry its zeal for the rights of the citizen so far as to encroach upon the functions of a co-ordinate branch. * * * *The Legislature is no doubt as sensitive to injustice as the courts.* By unsound or specious reasoning we might arrive at rough justice in a particular case. More often we could do nothing. *It is better that all understand that the legislative responsibility is undivided.*' " (Emphasis is that of the New Mexico court.)

The New Mexico Court then inquires:

> "Are we to say that the legislature should have expanded the provisions of the 1941 Act so as to have permitted recovery in an action such as this; and that the legislature having failed to do so, we will declare such to be the policy of this state?"

And the court then gives its own answer:

> "To do this, we think, would usurp the functions of the legislative branch of our government. Dougherty v. Vidal, supra; Vigil v. State, 56 N.M. 411, 244 P.2d 1110."

Relieved of the excess verbiage which clothes the Broadlands' repudiation of the basic doctrine of sovereign immunity, the Illinois case amounts to no more than a judicial change in that which was the law before the court spoke. The court indicated approval of the premise that the nonliability of public quasi-corporation is usually placed upon grounds that the corporators are made such nolens volens; that their powers are limited and specific and that no corporate funds are provided which can, without express provision of law, be appropriated to private indemnification. The court then says that as quasi-municipal corporations and municipal corporations both function as arms of the state, the reasons of their immunity are the same. But the court challenges the contention that neither the state nor a subdivision thereof can be sued without consent as being a statement of the rule without giving its reason, that rule being one of public policy to protect public funds and public property. It further says the rule of immunity stems from the Devon case, supra, and that one of the principal reasons there relied upon was the lack of corporate funds. The court, however, is silent as to the other matters hereinabove mentioned to which the Devon court gave important consideration and as to the unmistakable conclusion of the Devon court that the lowering of the bar of municipal immunity was a matter for legislative rather than for judicial action.

We can agree that a rule of law which is merely the product of judicial decision, born of the necessities of particular circumstance, is subject to judicial repudiation when the reasons which gave rise to its judicial adoption have failed or no longer exist. We do not, however, agree that an ancient doctrine firmly imbedded in that great body of Anglo-Saxon law which we inclusively refer to as the "Common Law", and which became that law through early usage and custom, can be judicially abrogated any more than courts are authorized to abolish statutory law because in their opinion the reason for the legislative enactment no longer justified the continuance of the law. That which is considered to be the merit of a law is not the criterion upon which courts base their decisions as to a law's continued existence. This in no wise affects the rules of law announced in Johnston v. Laird, 48 Wyo. 532, 52 P.2d 1219 or in Naab v. Smith, 55 Wyo. 181, 97 P.2d 677.

Even should some merit be conceded to the idea that if moneys provided by taxation for governmental purposes were saved harmless, the only remaining sound reason for municipal immunity would be removed, the pleading we are considering would still fall short of stating a cause of action. This is because the action is not limited to recovery from funds received from such insurance, notwithstanding appellants assert in their brief "* * * the prayer of the complaint is limited to the insurance coverage in amount * * *". Aside from the fact that it is only in appellant's brief that the suggestion appears that the "complaint is limited to insurance coverage", there is a wide range of difference between asking judgment in a sum which merely corresponds in amount to the face value of the insurance policy, as is true in the instant case, and an

action which seeks judgment to be satisfied exclusively from moneys when actually made available from insurance sources. Under these circumstances no assurance is given that tax moneys will not be required to pay any judgment which might be recovered against the town. It cannot be assumed that the town will at all events be reimbursed by the insurance company for the amounts the town would be compelled to pay to satisfy a judgment rendered against it. Nor may it be assumed that the town would even recover a judgment against the insurance company if and when the town brought action against the company under the contract of insurance. Furthermore, if judgment is obtained by the town against the insurance company in such an action, it might not be collectible as the company might become insolvent and unable to make the required payment. The most the town obtains by its purchase of insurance is a possible cause of action against the insurer. On the other hand, the town's judgment creditor can always and at all events make collection from the town whether it has funds immediately available or must later obtain them by taxation. See § 32-208, W.C.S.1945.

On the question of alleged waiver of municipal immunity by purchase of insurance, appellants first maintain that § 29-430, W.C.S.1945, authorizing incorporated towns "To require from all officers and servants elected or appointed, bonds and security for the faithful performance of their duties", is an implied statutory waiver of immunity. They submit as their sole authority for that contention Rogers v. Butler, 170 Tenn. 125, 92 S.W.2d 414. This was a suit against a county school board of education, where it was held that such a faithful performance bond is but a mode of insuring against the consequences of a servant's

negligence and that it was immaterial that the obligation taken was in the form of a liability insurance policy. However, we find the brief opinion in that case to be without citation of any supporting authority. The conclusion was that either a bond or an insurance policy served the purpose of the statute and that obtaining of either was within the authority granted the board by statute. Under such a decision, it is plain that our § 29-430, W.C.S.1945, would be legislative authority to the town of Kemmerer to purchase the type of liability insurance present in this case. From this, appellants reason our § 29-430, W.C.S.1945, requiring faithful performance by officers of their duties, is a blanket authority for the purchase of liability insurance by all governmental instrumentalities as an incident to the performance of their functions. While it may be true that an officer's faithful performance bond and a liability insurance policy are both intended to give protection to the town, to say that the giving of legislative authority to provide or to require the giving of a faithful performance bond necessarily implies that legislative authority has been given to either require or permit the town's obtaining liability insurance, goes farther than what we believe was the legislative intention when it enacted § 29-430, W.C.S.1945. We must, therefore, hold that the section referred to does not authorize a municipality to purchase liability insurance.

Our understanding of appellants' next suggestion is that because the legislative acts of 1947 and 1953, §§ 67-647 to 67-652, 1957 Cum.Pocket Supp., W.C.S. 1945, [see Laws 1947, ch. 103, § 1; Laws 1953, ch. 141, § 1; Laws 1953, ch. 141, § 2; Laws 1953, ch. 141, § 3; Laws 1955, ch. 61, §§ 1, 2] authorize school districts to obtain insurance policies, the legislature has given re-

cognition of the nonimmunity of governmental bodies, notwithstanding these acts expressly limited the school districts' liability to the amount of insurance coverage. But appellants say "These statutes do not create any liability and are specifically not a waiver of immunity from suit". We cannot dispute this statement. However, by giving this express authority to obtain insurance, the strongest implication arises that the means of realizing the benefits of such policies were also intended to be granted. To this end the legislative waiver of the districts' immunity was implied in order that the entitlement of all concerned, whether in benefit or protection, might be determined. The logical conclusion, therefore, is not that the acts mentioned give recognition that governmental elements are not possessed of immunity from tort action, but rather that they do have an immunity which the legislature has seen fit to waive to the extent of subjecting them to a liability limited to moneys made available from insurance. We do not have any statute which by implication or otherwise authorizes or permits a town to obtain liability insurance of the kind pleaded in this action, nor has any decision of this court to that effect been called to our attention.

There are many decisions from other jurisdictions which hold there can be no waiver of a municipality's immunity unless by specific legislative authority, and they are persuasive. Among them are Stephenson v. City of Raleigh, 232 N.C. 42, 59 S.E.2d 195; Pohland v. City of Sheboygan, 251 Wis. 20, 27 N.W.2d 736; Hummer v. School City of Hartford City, 124 Ind. App. 30, 112 N.E.2d 891; Wallace v. Laurel County Board of Education, 287 Ky. 454, 153 S.W.2d 915; Rittmiller v. School Dist. No. 84, D.C.Minn., 104 F.Supp. 187; Jones v. Scofield Bros., D.C.Md., 73

F.Supp. 395; Marmor v. Port of New York Authority, 203 Misc. 568, 116 N.Y.S.2d 177. We, therefore, hold it is beyond the power of a municipality to waive an immunity which it possesses by virtue of its being an arm of the state's government and that any waiver of such an immunity must come by direct action of the legislature or through the clear and unmistakable implication of its legislative acts.

We are asked to decide if the insurance company is estopped to plead immunity, and appellants say:

"To permit an insurance company to take premiums out of public funds for the represented purpose of protecting the public against acts of negligence, and then to hide behind a claim of municipal immunity which was specifically waived by the policy would be a fraud on the town and on the residents who supplied the premium funds."

The insurance company is not a party to this action, and so there can be no question of its estoppel. If there was misrepresentation on the part of the insurance company in securing premium payments for an insurance policy, which under the law of this State it was not authorized to give, that question of fraud is likewise not before us in this litigation. As we presently view the matter, even though the purchase of insurance should be authorized by statute, the desired protection cannot be assured, unless the insurance company is joined in the action as a co-defendant and made solely responsible to answer to any judgment rendered, or in the absence of such joinder, any judgment authorized to be rendered is limited to be recovered only from moneys made available by the insurance company and not otherwise.

Appellants also inquire, "Do plaintiffs have an action as third party beneficiaries under the insurance contract?" and say the insurance company is the true defendant in this action. We do not accept that statement. The town is the only defendant, the true defendant and the real party in interest in the action. Whether by reason of the insurance policy the plaintiff has a cause of action against the town, independent of any question respecting waiver of immunity—about which we have already expressed ourselves—is another matter not within the issues upon this appeal and will not be considered.

The final answer sought is whether the question of immunity which we have now answered can be raised by demurrer. To be explicit, it can.

Although we must hold that in the present state of the law of this State, the town of Kemmerer is immune from liability to the family of the deceased, we are not insensible that this may be inequitable. The deceased may have naturally joined in aid of the local policeman and suffered death as a consequence. In this view, Mr. Maffei was acting in a commendable manner and as might be desired of all good citizens. In not dissimilar circumstances our legislature has seen fit to take notice of some shortcomings in our law and have enacted separate laws for the relief of bereaved families. It is our misfortune in a case such as this that we are not privileged to respond to the dictate of our sympathies, but must stay with the law as we find it.

The order and judgment of the district court sustaining defendant's demurrer and dismissing plaintiffs' action is affirmed.

Affirmed.

ON PETITION FOR REHEARING.

Supreme Court of Wyoming.

June 23, 1959.

340 P.2d 759

Lee S. Nebeker, Green River, Richard L. Bird, Jr., and C. J. Frost, Salt Lake City, Utah, for appellants.

Before BLUME, C. J., and PARKER and HARNS-BERGER, JJ.

## OPINION ON REHEARING.

Mr. Justice HARNSBERGER delivered the opinion of the court.

A petition for rehearing has been filed, explaining that because of the town's contract of insurance the appellants could not have joined the insurance company. This is not a ground for rehearing.

The reargument respecting estoppel, waiver, whether the complaint was limited to recovery against the insurance company, and whether there was a miscarriage of justice because the insurance company sold the town a policy of insurance which did not give the town the purported protection, were all disposed of by the opinion.

Rehearing denied.