ROBINSON v. WASHTENAW CIRCUIT JUDGE.

1. STATES—GOVERNMENTAL FUNCTION—REGENTS OF UNIVERSITY NOT LIABLE FOR NEGLIGENCE OF UNIVERSITY SURGEON.

The board of regents of the University of Michigan, provided for in Article 11 of the Constitution, in maintaining and exercising general supervision of the University hospital, an adjunct of the State medical school which is a State educational instrumentality maintained by the public at public expense, is exercising a governmental function and therefore is not liable for the negligence of one of the University surgeons in performing a surgical operation, notwithstanding it is a public body corporate having the right of suing and being sued in a proper case involving property rights or based on contract relations.

2. SAME—CHARITABLE INSTITUTIONS NOT LIABLE FOR NEGLIGENCE OF ITS AGENTS.

That the University hospital is a charitable or eleemosynary institution because supported at public expense *held,* sufficient grounds for denying liability of the board of regents for said negligence.

Separate petitions for mandamus by Claud A. Robinson and Fay Robinson, to compel George W. Sample, circuit judge of Washtenaw county, to set aside orders dismissing certain declarations in actions at law. Submitted July 1, 1924. (Calendar Nos. 31,437, 31,438.) Writs denied July 24, 1924.

*William Henry Gallagher,* for plaintiffs.

*Cavanaugh & Burke,* for defendant.

STEERE, J. Plaintiffs in the above entitled cases are husband and wife. Each commenced a tort action in the circuit court of Washtenaw county against Dr. Scott C. Runnells and the regents of the

On liability of charitable institutions for negligence see notes in 7 L. R. A. (N. S.) 481; 10 L. R. A. (N. S.) 74; 22 L. R. A. (N. S.) 486; 32 L. R. A. (N. S.) 62; 42 L. R. A. (N. S.) 1144; 52 L. R. A. (N. S.) 505.

University of Michigan to recover damages resulting from injuries alleged to have been wrongfully inflicted upon her (Fay Robinson) while a surgical patient in the University hospital. The questions involved in these mandamus proceedings are substantially the same in both cases and they were submitted upon the same briefs. Service was duly had upon defendants and similar declarations, each containing two counts of like import, were filed and served. Counsel for defendant appeared specially in said cases and entered motions requesting the court for orders dismissing the declarations "or in the alternative, in case such relief cannot be granted, to dismiss the second count in said declarations against said regents of the University of Michigan," stating various grounds therefor. The court denied said motions as to Dr. Runnells and granted them as to the regents. Plaintiffs ask mandamus to compel defendant herein to set aside his orders dismissing the declarations against the regents.

The first count in the declarations alleges that Mrs. Fay Robinson being ill consulted Dr. Runnells, a physician and agent of the regents of the University, who advised her that an abdominal operation was necessary, to which she consented and was operated upon at the University hospital by him; and charges that in performing the operation he negligently permitted a sponge which he had placed in her abdomen to remain after the wound caused during the operation had been closed, in consequence of which she suffered greatly and became yet more dangerously ill, rendering another operation necessary in order to save her life, which disclosed the presence of the sponge left there during the former operation. The second count in the declarations more distinctly charges such neglect and lack of skill, with the serious results which followed, to the regents of the University of Michigan, their physicians, nurses, agents, servants, etc.

Plaintiffs' counsel in his brief points out that the actions are not brought "against the hospital of the University of Michigan, but against the regents of the University of Michigan," and urges that the question is disposed of by the provision of section 1159, 1 Comp. Laws 1915, providing that "The board of regents shall constitute a body corporate, with right as such of suing and being sued," contending that the regents are in no sense an eleemosynary institution entitled to be excepted from the general rule that a corporation is liable for the torts of its agents; while counsel for the regents urge that no cause of action is stated against them because the University hospital, maintained under the direction of the regents in connection with its medical department, is a charitable institution, eleemosynary in character.   Other objections are raised but this is the only one which we regard as calling for serious consideration.

The regents of the Michigan University are constitutional State officers, their selection and election being on the same basis as that of the judges of the Supreme and circuit courts, the State superintendent of public instruction and other specified State officers who are elected at the biennial spring election, all of whose names are required by law to be placed upon an official State ballot in a designated order, those of the regents being second on the list.

Our Constitution recognizes "Education" as a subject of governmental concern and activity.   Its article 11 is so entitled and devoted to that subject, three sections of which relate exclusively to regents of the University, who are to be eight in number, hold office for eight years, two to be elected at each regular biennial spring election.   They are to constitute a "body corporate known as 'The Regents of the University of Michigan.'"   They are given, as a board, "general supervision of the University and the

direction and control of all expenditures from the University funds." Section 10 of the article contains the mandate that "The legislature shall maintain the University" and other named State educational institutions, "and also such normal schools and other educational institutions as may be established by law." With such provisions in our Constitution it seems clear that the general supervision of the University, and direction and control of all expenditures from its funds is a governmental activity, and the board of regents a State agency to carry out the will of the people, as expressed in the Constitution they adopted, in regard to the educational institution committed to its care and supervision.

Prior to adoption of the old Constitution of 1850 the University was supervised and its affairs administered by a board of trustees as a body corporate to whom the regents succeeded under substantially the same provision as in our present Constitution of 1909. Its corporate character was, and is, clearly that of a public corporation, created for public purposes only, for no private emolument or advantage, and therefore an agency of the State government. It is required by law in broad terms to provide the inhabitants of the State the means of "acquiring a thorough knowledge of the various branches of literature, science and the arts." To that end it is required to establish and maintain numerous departments of schools devoted especially to instruction in various callings and professions, including a medical department in connection with which its hospital is maintained for the benefit of the public at public expense. Special laws of charitable import have been passed from time to time such as providing admission to the hospital and free treatment of indigent persons and others, admission of indigent children afflicted with curable deformity or chronic diseases with both medical and

surgical treatment, board, lodging and nursing free of charge, for maintenance of said hospital in operation during the summer vacations of the University, etc., all of which, furnished and maintained by the State, gives that adjunct of the medical department of the University the character of a public charitable hospital. The money raised by the State to maintain it, as well as the other activities of the University, is a trust fund of which the board of regents is trustee. As was said in *Downes* v. *Harper Hospital,* 101 Mich. 555 (25 L. R. A. 602, 45 Am. St. Rep. 427) :

"If, in the proper execution of the trust, a trustee or an employee commits an act of negligence, he may be held responsible for his negligent act; but the law jealously guards the charitable trust fund, and does not permit it to be frittered away by the negligent acts of those employed in its execution.. The trustees of this fund could not by their own direct act divert it from the purpose for which it was given, or for which the act of the legislature authorized the title to be vested in the defendant. It certainly follows that the fund cannot be indirectly diverted by the tortious or negligent acts of the managers of the fund, or their employees, though such acts result in damage to an innocent beneficiary. Those voluntarily accepting the benefit of the charity accept it upon this condition.

"The fact that patients who are able to pay are required to do so does not deprive the defendant of its eleemosynary character, nor permit a recovery for damages on account of the existence of contract relations. The amounts thus received are not for private gain, but contribute to the more effectual accomplishment of the purpose for which the charity was founded."

So far as we discover, the authorities are practically all to the effect that charitable or eleemosynary institutions supported wholly or in part by a State or municipality are not liable for personal injuries suffered through the negligence of an employee, servant or agent of the institution. Plaintiffs' counsel cites

no authority to the contrary, and apparently contends that decisions to that effect are not in point because the actions are against the regents made by statute capable of suing and being sued. The fact that the regents as a public body corporate have the right of suing and being sued in a proper case, involving property rights or based on contract relations, is immaterial here. The question before us is whether these declarations sounding in tort based on personal injuries state a cause of action against the board of regents.

The hospital is an adjunct of the medical department of the University, which is a State educational instrumentality maintained by the public at public expense, controlled and operated by the board of regents, a governmental agency which receives in trust and expends the public money devoted to that purpose. In the exhaustively discussed case of *Bruce* v. *Central M. E. Church*, 147 Mich. 230, 238 (10 L. R. A. [N. S.] 74, 11 Ann. Cas. 150), it is said by Justice OSTRANDER in his dissenting opinion:

"An examination of cases, including most of those cited in the opinion in the *Downes Case*, shows that in many instances the institutions were in fact State instrumentalities, as well as charities, and the denial of liability might have been rested in such cases wholly, as it was in some of them in part, upon that ground."

On the case stated in plaintiffs' declarations we think denial of liability as to the regents could safely be rested on either ground.

The writs of mandamus applied for are therefore denied.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.