Grafton,
Apr. 3, 1951. } No. 4011.

CHARLES CUSHMAN, *Adm'r v.* COUNTY OF GRAFTON *& a.*

*Morse, Hall & Morse* and *Thomas L. Marble* (*Mayland H. Morse, Jr.* orally), for the plaintiff.

*Sheehan, Phinney & Bass* and *Robert A. Jones,* County Solicitor, (*Mr. Phinney orally*), for the defendants.

JOHNSTON, C. J. In *Reynolds* v. *Nashua,* 93 N. H. 28, 29, this court held that it was settled in this jurisdiction that a city was not liable for any negligence of its agents or servants while performing a governmental function. "The plaintiff does not dispute the principle, settled in New Hampshire, that a municipal corporation engaged in a governmental function is not liable for any negligence of its agents or servants." This same principle of law applies to a county. *Dempster* v. *County,* 88 N. H. 472 and *O'Brien* v. *County,* 80 N. H. 522. On page 473 of the former opinion, the court stated: "The case of *O'Brien* v. *County,* 80 N. H. 522, is decisive against the plaintiff. It held that counties are not liable for defaults in the exercise of public governmental functions without statutory provision therefor."

The maintenance of a jail including the employment of a turnkey is of course a governmental function. *Dempster* v. *County, supra.* However, the plaintiff argues that the county was engaged in a commercial enterprise because "it was good business to let them [Mr. and Mrs. Cushman] occupy it [the dwelling] rather than to pay Mr. Cushman a salary large enough to permit him to hire an apartment elsewhere." As was stated in *Reynolds* v. *Nashua, supra,* 30, "A governmental function does not lose its character by incidental advantages or economies developed in the work." There is here no "particular and specific return" stated on page 31 of the last cited opinion to be generally an indication of a commercial rather than a governmental enterprise. The occupation by Mr. Cushman was incidental to his labor and employment as turnkey. "No relation of landlord and tenant existed between the parties." *Durivage* v. *Tufts,* 94 N. H. 265, 267. Mrs. Cushman was in the house in the right of her husband as employee of the defendant county. She was not a licensee of the county independently of the employment of her husband. Accordingly any liability of her estate on the theory of such a license need not be considered. The occupation of the house by both husband and wife was incidental to the employment of the husband as turnkey, which was a part of the governmental function of the maintenance of the jail.

It is claimed that since the county was insured under a general liability policy and since the defense of the action is being carried

on by the insurance company, a different rule of liability should be applied from that under which municipal corporations have been held immune from liability for torts committed in the course of governmental activities.

This is not such a case as *Fox* v. *Manchester*, 88 N. H. 355, 358, where it was conceded in court that the defense was being conducted by an insurance company and that the liability of the defendant should be decided under the applicable statute "precisely as though the city were a private employer."

Nor is it such a case as *Dunlap* v. *Dunlap*, 84 N. H. 352. There it was held that the immunity of an employer parent from suit by his employee minor son for negligence was due to the latter's disability to sue and not from lack of violated duty on the part of the former. The disability for bringing suit arose from the harmful effect a suit would have upon discipline and family life. It was considered that the carrying of insurance by the father would prevent such injurious results of a suit and accordingly such a disability did not exist in the case under consideration because he in fact carried employers' liability insurance.

In the instant case there is no disability to sue. The plaintiff fails because the defendant is not liable under the circumstances. This lack of liability is based upon public policy which has existed from time immemorial. Whether such policy is wise or unwise is not for this court to decide. Any change in it should come from the Legislature.

No claim is made that the defendant county should be held liable unless or beyond the extent that the defending insurer provides coverage. In *Boisvert* v. *Boisvert*, 94 N. H. 357, it was considered that the rights of an injured person to recover for gross negligence in the operation of an automobile against the insurance company must rest upon the provisions of the policy or upon a statute. There is no statute that benefits the present plaintiff in any claim based upon insurance.

The intention of the policy is shown in certain provisions. These are: "To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, . . . ; defend in his name and behalf any suit against the Insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; . . . " The company further agreed to furnish a bond to release any attachment of county assets.

There is no such provision as was found in the policy involved in *Arnold* v. *Walton,* 205 Ga. 606. There the insuring company expressly agreed in the policy not to plead as a defense the immunity granted to counties by law and to make only such defenses as would be made if the insured was a private corporation. The court did hold that these special provisions conferred no benefits upon the public and could be taken advantage of only by the insured. What this court would decide with respect to the benefit of such provisions need not be considered in their absence from the present policy.

So far as the liability of the insurer is fixed by the terms of the policy, it is determined by the provisions given above. The ordinary meaning of the phrase "liability imposed upon him by law" is liability determined by legal principles independently of the policy. If the parties to the policy had intended that such liability be extended or modified as was done in the policy under consideration in the Georgia case, it would have been easy to have so stated. Ordinarily, an indemnity policy is for the purpose of protection against liability and not for the creation or increase of liability. The policy is not to be construed as meaning liability affected by the insurance contract, unless the latter so states and specifies.

The question of whether under the circumstances the money of the county is wisely spent is not before us. Suits are defended even if groundless and attachment bonds must be furnished. County commissioners unversed in the law may find some justification for the purchase of public liability indemnity policies.

It is said that the county and the insurer waived any immunity by the execution and delivery of the policy. However, the doctrines of waiver and estoppel cannot be used to bring within the coverage of the policy risks not included within its terms. "It has been broadly stated that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect rights reserved therein. While an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting on a forfeiture of a policy, under no conditions can the coverage or restrictions on coverage be extended by waiver or estoppel." 16 Appleman, Insurance Law and Practice 629.

*Judgment for the defendants.*

KENISON and DUNCAN, JJ., concurred in the result: the others concurred.