CHRISTIE *v.* BOARD OF REGENTS OF
UNIVERSITY OF MICHIGAN.

1. DISCOVERY—DISCRETION OF COURT—ACTION AGAINST UNIVERSITY HOSPITAL.
   Order of circuit court granting petition for discovery, filed by minor plaintiff prior to declaration in action against governing body of State university hospital, for purpose of production and inspection of liability insurance was well within the discretion of the court under court rule, the sole relevant requirement of the rule being that there be a fair showing that the production and inspection be made in order that he properly declare the cause his petition portrays (Court Rule No 40 [1945]).

2. COSTS—DISCOVERY—UNIVERSITY REGENTS—LIABILITY INSURANCE.
   No costs are allowed on appeal from an order granting minor's petition for discovery as to liability insurance policy which the board of regents of the university of Michigan had procured (Const 1908, art 11; Court Rule No 40 [1945]).

CARR and KELLY, JJ., dissenting.

Appeal from Washtenaw; Breakey, Jr. (James R.), J. Submitted April 11, 1961. (Docket No. 59, Calendar No. 48,861.) Decided September 22, 1961.

Case by Kirk Christie, by his next friend, Clarence Christie, against the Board of Regents of the University of Michigan for personal injuries sustained

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur, Discovery and Inspection § 30; 26 Am Jur, Hospitals and Asylums § 12; 29A Am Jur, Insurance § 1355.
   Pretrial examination or discovery to ascertain from defendant in action for injury, death, or damages the existence and amount of liability insurance and the insurer's liability. 41 ALR2d 968.
[2] 14 Am Jur, Costs § 37.

while a patient at the University Hospital. Petition filed for discovery and order entered directing defendant to produce for inspection its liability insurance policy. Defendant appeals. Affirmed.

*Foster, Foster, Campbell & Lindemer* (*Theodore W. Swift* and *Edmund E. Shepherd,* of counsel), for plaintiff.

*Burke, Burke & Ryan,* for defendant.

BLACK, J. Comes the intruder spoilsport as the legislative and judicial branches continue their gambol o'er the field of sovereign immunity. Here the recurrent problem—what to do with another aspect of such immunity—cannot be buck-lateraled to the legislature. By the Constitution that august body has been rendered ineligible to receive, in today's game, any kind of a pass from the judicial branch.

Plaintiff, at 7 years of age, sues for personal injury said to have been negligently inflicted while he was a patient—during early infancy—in the university hospital. The asserted negligence consists of permitting him to fall "from an unattended crib from which all restraints had been removed."

Suit was commenced by summons. With commencement of suit plaintiff filed a petition for discovery, asking among other things that the defendant board of regents be compelled "to produce its policy of liability insurance for the inspection and examination by the plaintiff." The circuit judge entered an order for production and inspection of the policy, doing so on theory that the policy should be ordered in as possibly admissible evidence tending to establish that the defendant board had waived its immunity from liability, to the plaintiff, to the extent of the insurer's monetary obligation.

On application of defendant and grant of leave we review such order for production and inspection. Plaintiff's statement of the reviewable question is comprehensive and fully explanatory:

"In civil action against board of regents of university of Michigan for personal injuries suffered by infant patient of university hospital through negligence of defendants' servants, agents and employees, did circuit judge abuse his discretion on plaintiff's amended petition for discovery filed prior to declaration when he ordered defendants to produce for plaintiff's examination the contract of insurance existing between them and their liability insurance carrier when the cause of action arose?"

I would affirm on ground that the questioned order is well within the discretionary authority Court Rule No 40 (1945) provides. The relevantly sole requirement of that rule is that there be fair showing that the petitioning plaintiff needs such production and inspection in order to declare properly the cause his petition supposedly portrays.

Does this plaintiff need the policy in order to declare? From the face of his untraversed petition I conclude he does. *McNair* v. *State Highway Department,* 305 Mich 181, has made it abundantly clear that when an apparently immune public body is sued on allegation of tort liability the plaintiff must allege facts which, if true, overcome the standard posture of such body that "no court can hold us liable." In a word, a part of this plaintiff's burden is that of duty to plead and prove some status which legally impairs or destroys the defendant board's seeming exemption. No waiver *by neglect to raise the question* can exist (*McNair, supra*), and so it is necessary to explore the ultimate and decisive question: Whether the resolution of the defendant board to acquire and maintain such liability insurance oper-

ates as a matter of law to waive its immunity to the extent of the insurer's obligation.

I agree with the statement of the annotator of a recent and exhaustive appraisal of this question who says (annotation headed "Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability"; 68 ALR2d 1437, 1448):

"In a few jurisdictions the courts have taken the view (which is worthy of characterization as enlightened) that to the extent that a liability insurance policy protects a governmental unit against tort liability, the otherwise-existing immunity of the unit is removed."

In this case there are 2 good reasons for concurrence with the annotator's conclusion that such is the "enlightened" view. The first is that the fact of such insurance has eliminated the classically suave reason for immunity of the defendant board from liability (if proven) to this plaintiff.[*] The other and specially distinctive reason is that the defendant board is so far autonomous and constitutionally independent as to clothe it with plenary as well as exclusive power of waiver of such immunity and that it has already exercised such power so far as concerns this case.

The first point—that the board's determination to acquire and carry liability insurance removes the historic reason for immunity—requires no extended analysis. We are yet free to pick and choose among authorities extant. My choice, if it were presently necessary to choose, would be with the "enlightened" —and visibly growing—minority. As the cited annotation shows, the more numerous authorities ad-

---

[*] See, for recent exposition and repudiation of the doctrine that immunity is required to protect public revenues from dissipation on account of torts of public servants, *Molitor* v. *Kaneland Community Unit District No. 302*, 18 Ill2d 11 (163 NE2d 89), and *Muskopf* v. *Corning Hospital District*, 55 Cal2d 211 (11 Cal Rptr 89, 359 P2d 457).

here to position that public bodies, having spent public money for liability protection thereby incur no liability; a game which in fact if not by design unjustly enriches the insurer for carrying a risk where there is no risk.* Other authorities, "enlightened" I repeat, pursue the opposite and more explicable view.

Whatever view one may take of this diversity, the majority rule becomes irrelevant when it is shown that the critical bastion thereof (that the legislature only may waive) is nonexistent. Such is the case here. If the defendant board is by the Constitution given the exclusive power to waive, then it would surely seem that the reasoning of such minority is best for the specific case at bar.

The board of regents is a separate and self-governing body corporate, made so by the Constitution (Const 1908, art 11, § 4). By our decisions it is "a constitutional corporation of independent authority, which, within the scope of its functions, is co-ordinate with and equal to that of the legislature." It has "independent control of the affairs of the university by authority of these constitutional provisions" (quotations from *Board of Regents of the University of Michigan* v. *Auditor General,* 167 Mich 444, 450), and so its counsel are right when they insist in their brief that the legislature (as in the case of the State proper and its statutory agencies) cannot waive the

---

* The majority rule, and the reasoning submitted in support of it, was comprehensively summarized in the recent case of *Maffei* v. *Incorporated Town of Kemmerer,* 80 Wyo 33 (338 P2d 808, 817):

"There are many decisions from other jurisdictions which hold there can be no waiver of a municipality's immunity unless by specific legislative authority, and they are persuasive. [Citing cases.] We, therefore, hold it is beyond the power of a municipality to waive an immunity which it possesses by virtue of its being an arm of the State's government and that any waiver of such an immunity must come by direct action of the legislature or through the clear and unmistakable implication of its legislative acts."

immunity of the board without consent of the board.* But this is a knife with 2 edges. If the board by the Constitution stands separate from and declaredly equal to the legislature, then it alone has a right to waive and, by the same token, a right to reject any legislative act of waiver in its behalf. By the past and tried reasoning of this Court the board is, "within the scope of its functions," its own legislator and may legislate that which I find implicit in its decision to carry the insurance that this plaintiff would unearth for the purposes of pleading.

Consider these interpretations we have made of the eleventh article and its predecessor:

"But the people, who are the corporators of this institution of learning, have, by their Constitution, conferred the entire control and management of its affairs and property upon the corporation designated as 'the Regents of the University of Michigan,' and have thereby excluded all departments of the State government from any interference therewith. The fact that it is State property does not bring the regents within the purview of the statute. The people may, by their Constitution, place any of its institutions or property beyond the control of the legislature." *Weinberg* v. *Regents of the University of Michigan,* 97 Mich 246, 254, 255.

"The board of regents and the legislature derive their power from the same supreme authority, namely, the Constitution. Insofar as the powers of each are defined by that instrument, limitations are imposed, and a direct power conferred upon one necessarily excludes its existence in the other, in the absence of language showing the contrary intent.

---

* Counsel for the board do not stop with assertion that the legislature cannot waive the board's immunity. They take a 7-league step farther by this bold *ipse dixit:* The people only, by constitutional amendment, may waive in behalf of the board. With the latter I cannot agree. By force of the broad construction this Court has placed on article 11 the board may lawfully waive its own immunity from tort liability.

Neither the university nor the board of regents is mentioned in article 4 (Const 1850), which defines the powers and duties of the legislature; nor in the article relating to the university and the board of regents is there any language which can be construed into conferring upon or reserving any control over that institution in the legislature. They are separate and distinct constitutional bodies, with the powers of the regents defined. By no rule of construction can it be held that either can encroach upon or exercise the powers conferred upon the other." *Sterling* v. *Regents of the University of Michigan,* 110 Mich 369, 382 (34 LRA 150).

"By the provisions of the Constitution of 1850, repeated in the new Constitution of 1909, the board of regents is made the highest form of juristic person known to the law, a constitutional corporation of independent authority, which, within the scope of its functions, is co-ordinate with and equal to that of the legislature. By the old Constitution it is given 'direction and control of all expenditures from the university interest fund' (section 8, art 13); and by the new Constitution 'general supervision of the university, and the direction and control of all expenditures from the university funds.' Section 5, art 11. That the board of regents has independent control of the affairs of the university by authority of these constitutional provisions is well settled by former decisions of this court. (Citing and quoting cases.)" *Board of Regents of the University of Michigan* v. *Auditor General,* 167 Mich 444, 450, 451.

"They [the people] have made of them [board of regents and State board of agriculture] the most unique organizations known to the law, in this, that they are constitutional corporations created for the purpose of independently discharging State functions." Prevailing opinion of McDonald, J., in *State Board of Agriculture* v. *Auditor General,* 226 Mich 417, 423.

Relying on *Weinberg* and *Sterling,* the author of Charters and Basic Laws of Selected American Universities and Colleges (published by the Carnegie Foundation, New York, 1934) concludes rightly (p 350 under heading "Constitutional Independence") :

"The board of regents and the legislature derive their power from the same supreme authority, namely, the Constitution. They are separate and distinct constitutional bodies. No other conclusion is possible than that the intention was to place the university in the direct and exclusive control of the people themselves, through a constitutional body elected by them."

And Chambers' "The Colleges and the Courts" (Columbia Univ. Press, New York, 1952) describes the constitutional position of the university this way (p 63) :

"The State universities in Michigan, Minnesota, California, Idaho, Colorado, and Utah continue to have the dignity of fourth co-ordinate arms of the State government, as do the separate land-grant colleges in Michigan, Oklahoma, and Utah."

*Summary:* The board of regents has exclusive power to waive the immunity our decisions have bestowed on it.[*]   Such may be done by implication from action of the board as well as by express resolution thereof. Here the board has solemnly resolved to carry and pay for, out of funds of the university committed to its discretion, such insurance against liability as is quite inconsistent with an immunity from such liability. Originally there was no liability. Now, by voluntary and lawful action of the board, there is liability and insurance against loss occa-

---

[*] *Robinson* v. *Washtenaw Circuit Judge,* 228 Mich 225, is not opposed to these conclusions. The effect of acquisition of liability or indemnity insurance was not considered on that occasion and we may assume from the Court's opinion that the board did not carry such protection at the time.

sioned by such liability. If this is not true, then we must instead attribute to an unusually exalted group of constitutional officers the intent solely of awarding some politically influential insurance agency a fat and steady premium account for insuring the board and the university against risks which do not exist. That I am unwilling to do. The board does not sit and govern in the midst of partisan pressures and it should be accorded the presumption that each determination of its members to spend university funds imports a consideration; something for something which is valuable to the university.

It requires no Churchillian-worded resolution of the board of regents—adorned say with red ribbon and blue seal—to waive a status which at best stands precariously at bay before the developing impact of judicial authority (see discussion and exhaustive examination of authorities in *Parker* v. *Port Huron Hospital,* 361 Mich 1, and the most recent case in point, *Muskopf, supra*). In the law as elsewhere actions sometimes speak louder than words. Here, by force of contemplative action of the board, we must either by our decision tacitly approve dissipation of university funds to no useful end or draw from that action whatever liability the judicial process may decide is a reasonable incident thereof. I prefer the latter and accordingly agree with the reasoning of Chief Justice DETHMERS, recorded in *Peters* v. *Michigan State College,* 320 Mich 243, 251.

Plaintiff's undenied petition for discovery discloses good reason for exercise of the discretion Court Rule No 40 (1945) confers. The defendant board should be required to bare its policy—insurance policy, that is. Further, and if the inspected policy fairly suggests additional inquiry, the minutes or other evidences of corporate action by which the insurance was acquired should be discovered under the rule.

I vote to affirm, without an award of costs.

SUPPLEMENT (September 1, 1961).

This case of Christie was duly assigned to the writer prior to commencement of our April term. In pursuance of such assignment the foregoing opinion was prepared and delivered to other members of the Court under date of June 6, 1961. Since then Mr. Justice CARR, writing under date of August 30, 1961, for reversal, has called attention to an affidavit, "executed by 1 of the attorneys for defendant, indicating that a search of the files and records of the university had not disclosed any copy of such a policy, and such had not been otherwise discovered or made known to defendant."

The affidavit to which my Brother refers was prepared (and included in defendant's appendix) long after Judge Breakey's presently reviewed order for discovery was entered, and long after we had granted (July 11, 1960) defendant's application for leave to appeal. No one claims that it or the thrust thereof—that no policy can be produced—was ever brought to the trial judge's attention, and no motion designed to include same in the record on appeal (see Court Rule No 72, § 1[d], [e] [1945]) has been made at any time.

In order that the exact content of this "unable to find" affidavit may be read by the profession with verbated accuracy, same is quoted in full as follows:

"1. That on December 18, 1959, the circuit court ordered the production of the defendant's liability insurance policy which was in force in September of 1953, for the purpose of permitting the plaintiff to inspect the same.

"2. That from said order application for leave to appeal to the Supreme Court was taken and said application was granted on July 11, 1960.

"3. That at the time the matter was being considered by the circuit court and during all of the

time that appeal proceedings were pending the defendant did not know that the said policy was not capable of being produced.

"4. That upon request of your deponent, a search was made of the files and records of the University of Michigan for the policy, which could not be found, and on information and belief a search was made of the files and records of the defendant's insurance carrier, both in the Detroit office and in the New York office, and no copy of such policy was discovered. That as of this date, a continuing search of the company's New York office is being made.

"5. That this fact was not known conclusively by the defendant or by this deponent until on or about October 28, 1960."

It will be noted that the affiant carefully refrains from saying that no policy was ever existent or in effect, and the fact that an instrument once at hand has since been lost provides no way for evasion of discovery. In such case the law employs its tried rules of best and secondary evidence.

I do not care to encourage the growing practice of bolstering circuit court records by post-appeal *ex parte* affidavits of fact (see *Chircop* v. *City of Pontiac,* 363 Mich 693). Such affidavits usually—as here —set forth facts which have never been brought to the attention of the trial judge or chancellor. It is suggested instead that we have no right to consider instruments of that nature unless and until they have been made a part of the record pursuant to said Court Rule No 72 (1945).

If in this case it is shown—ultimately—that the defendant at no time acquired a policy such as Judge Breakey ordered produced, the judge will surely modify his order. Until such showing is made we should proceed to review upon the circuit court record as it stood when the order of discovery was

made and our order granting leave to review that order was entered.

My vote to affirm, without costs, is cast again.

EDWARDS, J. (*concurring*). We concur in affirmance on the grounds stated in sentences 4 through 14 of the opinion of Mr. Justice BLACK.

KAVANAGH and SOURIS, JJ., concurred with EDWARDS, J.

CARR, J. (*dissenting*). The determination of the issue here is of vital concern not only to the university of Michigan but also to the State, governmental institutions and agencies of the State, municipalities, governmental subdivisions, and school districts. It requires our most serious consideration. Shall basic principles of law and public policy, uniformly recognized and upheld in this State up to this time, be now abandoned?

The case now before us was instituted by issuance of a summons from the circuit court of Washtenaw county, requiring defendant's appearance within 15 days after service thereof. The writ specified that plaintiff claimed damages in an amount not exceeding $375,000. On the same date that the summons was issued counsel for plaintiff filed a petition, or motion, for an order of discovery. It was set forth therein that on or about September 13, 1953, plaintiff was a patient in the university of Michigan hospital, and that as a result of negligence on the part of hospital attendants he was allowed to fall in such manner as to cause serious physical injuries. Disclosure of certain facts and of exhibits presumably desired for admission on the trial was asked, including "the insurance contract of defendants and their liability carrier."

Apparently all information sought by the petition was furnished to plaintiff's counsel pursuant to agreement with attorneys representing defendant, with the exception of the liability insurance policy. By subsequent amendment to the petition it was asserted on behalf of plaintiff that access to said policy, if in existence, was necessary to enable his counsel to properly allege the cause of action relied on in the declaration to be filed. The language of the petition for discovery indicated that counsel representing plaintiff were proceeding on the theory that, if liability coverage was afforded by a policy of the character in question at the time of the injury to plaintiff, public funds, at least to the extent of such coverage, would not be jeopardized, that the taking out of the policy eliminated *pro tanto* the right of governmental immunity, and that a cause of action was in consequence created as against defendant (or the insurance carrier) to the extent of the liability coverage specified in such policy, assuming that there was such.

Following a hearing on the discovery petition the circuit judge before whom the matter was heard entered an order directing that:

"The defendants produce for plaintiff's examination the contract of insurance which was existing between defendants and their liability insurance carrier on the 13th day of September, 1953. Said contract may be photographed by plaintiff."

It will be noted that the order above quoted, from which defendant on leave granted has appealed, assumes the existence of a policy of the general nature suggested by the petition for discovery. Said petition did not aver the actual fact in this regard, the request for the order sought, and granted, apparently resting on the theory that a general liability insurance policy covering defendant and its agents, rep-

resentatives and employees, might be in existence, and that if so it should be produced to the end that the cause of action might be averred accordingly. In appellant's appendix we find an affidavit, executed by 1 of the attorneys for defendant, indicating that a search of the files and records of the university had not disclosed any copy of such a policy, and such had not been otherwise discovered or made known to defendant. Whether there was a sufficient basis afforded by the petition for discovery to entitle plaintiff to the order sought may well be questioned, but in view of the importance of the basic question at issue it will be assumed herein that compliance with the order of the circuit court is possible.

Counsel for plaintiff contend in substance that if defendant procured to be issued to it a policy of insurance covering liability for negligence of its agents and employees generally it thereby waived the right to assert governmental immunity as a defense. The argument concedes the existence of the immunity doctrine and that it is applicable to defendant. This, of course, is in accord with prior decisions of this Court. Counsel apparently base their argument on the theory that such immunity is a matter of defense, but such is not the fact. If immunity exists there is no cause of action. In consequence, we are not here concerned with the problem of waiver of a defense to an action for damages. Rather, the question before us is whether the taking out of a liability insurance policy, if such there was, abrogated, at least *pro tanto,* the immunity that otherwise would exist.

Necessarily involved in the problem before us are 2 questions: First, did the board of regents have the power to abrogate as to itself the doctrine of governmental immunity, either wholly or in part?; Second, would the taking out of an insurance policy against liability for negligent acts of employees and others

have the effect of abolishing such governmental immunity, either partly or wholly? Both of these questions must be given a negative answer. Emphasis is placed on the fact that under the Constitution of the State (article 11, § 5) the board of regents is charged with "the general supervision of the university and the direction and control of all expenditures from the university funds." Section 10 of the same article requires that the legislature "shall maintain the university" and other designated educational institutions. The supervision of the university and the expenditure of its funds do not involve the exercise of legislative authority. Nowhere in the Constitution of the State do we find granted to the defendant board authority of such character. The making of appropriations for the support of the institution was expressly committed to the legislature, such action obviously falling within the scope of legislative powers.

Article 5, § 1, of the Constitution declares that "The legislative power of the State of Michigan is vested in a senate and house of representatives", such vesting being subject to the powers reserved to the people under the initiative and referendum provisions in said section. In *Harsha* v. *City of Detroit,* 261 Mich 586, 590 (90 ALR 853), it was stated that:

"The legislative power is the authority to make, alter, amend, and repeal laws. 1 Cooley, Constitutional Limitations (8th ed), p 183."

The doctrine of immunity in connection with the performance of governmental functions has been accepted in Michigan, and in the other States of the Union as well, as a part of the common law. The 3 Constitutions adopted in the past expressly recognized the continuing force of the common law, the Constitution of 1850 declaring in section 1 of the schedule thereof that:

"The common law and the statute laws now in force, not repugnant to this Constitution, shall remain in force until they expire by their own limitations or are altered or repealed by the legislature."

In the Constitution of 1908 the last 3 words quoted were omitted, the record of the proceedings of the Constitutional Convention indicating that such omission resulted from the plan for local self-government for cities and villages, adopted by the convention, such plan contemplating the preparation and acceptance of home-rule charters to take the place of existing legislative charters. Obviously it was deemed expedient to eliminate any question as to the necessity of having a legislative repeal of existing special charters. The omission of the words in question did not alter the fact that all legislative power was vested, under the specific provisions of the Constitution, in the legislative department of government. Such power extended to and included specifically the repeal or modification of the common law recognized by the Constitutions, including the present fundamental law of the State. The conclusion necessarily follows that the board of regents of the university of Michigan was not vested with legislative authority to abrogate as to itself the existing doctrine of governmental immunity.

It was declared by this Court in *Lucking* v. *People,* 320 Mich 495, 503, that:

"The lands, buildings and equipment under the management, supervision and control of the board of regents of the university are public property, owned by the State of Michigan."

As before noted, the Constitution of the State commits to the defendant board the duty and responsibility of exercising supervisory control over the university and also responsibility for the expenditure of its funds. The duty thus created exists

and must be exercised for and on behalf of the people of the State. No one will seriously contend that the authority so granted would permit gifts of property or money, belonging to defendant board, required to be used for the purpose above indicated. By the same process of reasoning defendant in the exercise of the supervisory and administrative functions vested in it by the Constitution may not surrender or abrogate valuable rights recognized by the fundamental law of the State, and created and existing for the benefit and protection of defendant in the performance of its governmental duties. Had defendant by express resolution undertaken to abolish or modify the doctrine of governmental immunity as to it, such action would have been ineffective. Nor could such result follow from a contract executed in connection with the carrying on of functions of the board.

A State agency or municipal governmental authority may not bind itself by a contract into which it is not authorized to enter. As above pointed out the Constitution of Michigan, by which defendant board is bound, contains no grant of power to invade the legislative field nor to enter into contractual undertakings other than in furtherance of the authority granted and in the exercise of the purposes thereof. In *Stephenson* v. *City of Raleigh,* 232 NC 42 (59 SE2d 195), tort liability arising from negligence in the performance of a governmental function was asserted against defendant city. Plaintiff alleged in her complaint that defendant by taking out a policy of liability insurance thereby waived its right to invoke the doctrine of governmental immunity. The court rejected the claim on the ground that the defendant city was not authorized to abrogate the rule with reference to such immunity. The following significant comment was also made in the opinion (p 47):

"Moreover, plaintiff, appellee, by amending the complaint, has undertaken to spell out the terms of, and the conditions pertaining to the alleged contract,—of waiver of immunity,—an insurance policy. But reference to the quoted portion clearly reveals that the policy is one of indemnity against loss, and protects only the insured, the city of Raleigh, and does not purport to create liability to anyone who may suffer tortious injury as result of acts of officers, agents or employees of the city in the performance of governmental duties. Thus the amendments are deemed to be immaterial and irrelevant to the cause of action attempted to be alleged in the complaint. Hence the motion to strike has merit,— and should have been allowed."

In *Salley* v. *McCoy*, 182 SC 249 (189 SE 196), the action was brought by plaintiff to recover salary fixed by law for the office which he held and which had not been paid because of an agreement for the withholding thereof. Such agreement was raised by way of defense to the action, but the supreme court of the State held that a contract of the nature involved was against public policy and therefore void. Such holding is consistent with the decision of this Court in *Lee* v. *County of Macomb,* 288 Mich 233. In discussing the matter the South Carolina court said in part, with reference to the distinction between estoppel and waiver (p 281):

"Estoppel arises from circumstances under the control of one party making it unconscionable for him to assert a right against another. The intention of the party estopped does not affect the application of the doctrine. Waiver, on the other hand, is based upon the principle that a party in possession of a right may relinquish it *if he chooses to do so*. Consent, either expressed or implied, must be shown by a party relying on waiver to bar a right which the other party admittedly had. I conceive then that waiver, being contractual in its nature,

can be no more effective as a bar than an express agreement or contract, and cannot arise from a transaction between parties in respect to a matter about which their express contract would be invalid as against public policy."

See, also, with reference to lack of authority to waive or abrogate the right to rely on the rule of governmental immunity in tort actions for damages, based on alleged negligence, the decision of this Court in *McNair* v. *State Highway Department,* 305 Mich 181, 187, where it was said:

"Moreover, the failure to plead the defense of sovereign immunity cannot create a cause of action where none existed before."

In the instant case there is no possible basis for a claim that the board of regents intended by any action on its part to abrogate or modify the doctrine of governmental immunity to which it is subject. Assuming that it took out a policy of insurance of the character suggested by counsel for plaintiff, no claim is made that it did so with the intention to assume liability from which it was exempt under the immunity rule. An intent to abrogate a right is analogous to the corresponding intent essential to a binding waiver. The latter term is defined in 92 CJS, Waiver, p 1049, as follows:

" 'Waiver' implies that something may be relinquished, the abandonment of a right which can be enforced or of a privilege which can be exercised, and it implies an election to dispense with something of value, or to forgo some advantage which the party waiving it might at its option have demanded or insisted upon. It involves the concept of an intention entertained by the holder of some right to abandon or relinquish instead of insisting upon the right, and it implies abandonment, not segregation for future use."

It has been frequently said that waiver and estoppel are closely related. 31 CJS, Estoppel, § 61, p 245. In numerous decisions it has been recognized that implied waiver rests on the general equitable doctrine of estoppel. *Guenther* v. *City of Des Moines,* 197 Iowa 414 (197 NW 326). In the instant case there is no claim of estoppel nor are facts asserted to furnish any basis whatever therefor. Plaintiff and his counsel have not altered their position to their prejudice in reliance on any act of the defendant. On the contrary, the theory is advanced that plaintiff has a cause of action against defendant predicated on the purchase by the latter of a policy for indemnity against judgments arising from negligent or other tortious conduct on the part of defendant's employees.

Counsel for plaintiff rely on decisions in Tennessee, Kentucky, and Illinois, in support of their claim that obtaining protection of an insurance policy, which may render unnecessary the use of public moneys to satisfy a judgment for damages, eliminated the question of governmental immunity to the extent of such coverage. Such decisions are in the minority. The overwhelming weight of authority on the subject supports the general proposition that the taking out of an insurance policy does not create a cause of action where none existed before. It may be noted in passing that the Illinois legislature, apparently taking issue with the decision of the court in that State, proceeded to adopt a statute granting a limited tort immunity to school districts and nonprofit private schools. (Ill Rev Stat 1959, ch 122, pars 821–831, incl.*)

The Tennessee and Kentucky cases were referred to by the supreme court of Iowa in *McGrath Building Company, Inc.,* v. *City of Bettendorf,* 248 Iowa

* S–H Ill Ann Stat 1960 Pocket Part, ch 122, §§ 821–831.—RE-PORTER.

1386 (85 NW2d 616, 68 ALR 1429). In that case the plaintiff asserted liability on the part of defendant city to respond in damages resulting from alleged negligence on the part of its employees on the theory that defendant had nullified its govermental immunity by purchasing insurance. In rejecting such claim, and commenting on other decisions involving the question, it was said (pp 1393, 1394):

"It will be noted that the insurance the municipalities are authorized to purchase is for protection against any liability the municipal employees or the municipal corporation 'may incur'. We find in this no expression of any legislative intent to enlarge the liability of the city or town which purchases such a policy. It is permitted only to insure against any liability it may incur; and there are, and were at the time of the enactment of the statute, many potential liabilities which both the municipality and its employees might incur. Neither the city nor its employees were protected against liability for negligence incurred in performing proprietary functions; and the city at least had liability for its failure to keep its streets and parks reasonably safe and free from nuisance. Numerous cases have so held. A legislative purpose to enlarge the potential liability of the city or town carrying insurance cannot be found in the statute. As the New Hampshire supreme court well said when faced with a similar contention: 'An indemnity policy is for the purpose of protection against liability and not for the creation or increase of liability.' *Cushman* v. *County of Grafton,* 97 NH 32, 35 (79 A2d 630, 632).

"A large majority of the courts which have considered the question have held that the purchase of an insurance policy does not create a waiver of immunity. *Cushman* v. *County of Grafton, supra; Hummer* v. *School City of Hartford City,* 124 Ind App 30 (112 NE2d 891); *Wallace* v. *Laurel County Board of Education,* 287 Ky 454 (153 SW2d 915) (a case cited by appellee, but supporting appellant's

position); *Pohland* v. *City of Sheboygan,* 251 Wis 20 (27 NW2d 736); *Thompson* v. *Board of Education of the City of Millville,* 11 NJ 207 (94 A2d 206); *Utz* v. *Board of Education of Brooke County,* 126 W Va 823 (30 SE2d 342). A minority view is perhaps represented by *City of Kingsport* v. *Lane,* 35 Tenn App 183 (243 SW2d 289), and other Tennessee cases, and by *Taylor* v. *Knox County Board of Education,* 292 Ky 767 (167 SW2d 700, 145 ALR 1333). The latter case was decided after enactment of a statute authorizing a school district to create a fund for the payment of damages for injuries to school children, which statute was not in existence at the time of the decision in *Wallace* v. *Laurel County Board of Education, supra.* The Tennessee cases also turn upon peculiar provisions of statutes not found in our [Iowa Code Ann, 1960 Pocket Part] section 368A.1(12). They furnish no support for the contention that the city of Bettendorf waived its governmental immunity by purchasing a liability insurance policy. The trial court was in error in striking the city's affirmative defense number 7."

The above case is reported in 68 ALR2d 1429, followed by an annotation in which it is said (p 1438):

"The law on the annotated question may be summarized briefly. In a majority of jurisdictions it is held that the procurement of liability or indemnity insurance by a governmental unit has no effect upon its immunity from tort liability. In support of this view it has been said that the mere fact that a governmental unit is authorized to procure insurance does not warrant the conclusion that its immunity has been removed; that a governmental unit lacks power to waive its immunity or estop itself by procuring insurance; and that liability or indemnity insurance which is procured by a governmental unit entitled to immunity from tort liability is insurance only against torts which do not come within the scope of the immunity—for example, torts committed by the unit while acting in its pro-

prietary, as contrasted with its governmental, character."

It was further declared (p 1439) that:

"The prevailing view on the question under annotation is that a governmental unit's immunity from tort liability is unaffected by its procurement of insurance which purports to protect it from such liability. To this effect are the following decisions:"

The above statement is followed by the citation of cases in 21 States.

In *Pohland* v. *City of Sheboygan*, 251 Wis 20 (27 NW2d 736), an action to recover damages from defendant city was brought by plaintiff. It was there claimed that the city and its insurer under an indemnity contract were estopped from asserting that the injuries for which plaintiff sought damages were sustained while the city was engaged in the performance of a governmental function. Apparently the policy contained an express provision that neither insured nor insurer would assert the defense of governmental immunity in an action to recover based on alleged negligence of city employees. It was held that under the law of Wisconsin the defendant municipality had no authority to make the agreement in question, that, in consequence, the city was not liable, and that the policy being one of indemnity the insurance company could not be held to respond in damages.

In accord with other decisions sustaining the majority rule is the holding of the New Hampshire court in *Cushman* v. *County of Grafton*, 97 NH 32 (79 A2d 630). In that case the action was brought to recover damages for the death of plaintiff's intestate resulting from alleged negligence on the part of defendant county in the maintenance of a building in connection with the operation of the county jail. It appears that the county was insured under

a general liability policy and the insurer conducted the defense in the case. The policy provided in terms that the company would pay on behalf of the insured all sums which the insured should become obligated to pay by reason of the liability imposed upon it by law. In rejecting plaintiff's claims it was said (pp 34, 35):

"In the instant case there is no disability to sue. The plaintiff fails because the defendant is not liable under the circumstances. This lack of liability is based upon public policy which has existed from time immemorial. Whether such policy is wise or unwise is not for this court to decide. Any change in it should come from the legislature.    *    *    *

"So far as the liability of the insurer is fixed by the terms of the policy, it is determined by the provisions given above. The ordinary meaning of the phrase 'liability imposed upon him by law' is liability determined by legal principles independently of the policy. If the parties to the policy had intended that such liability be extended or modified as was done in the policy under consideration in the Georgia case [*Arnold* v. *Walton*, 205 Ga 606 (54 SE2d 424)], it would have been easy to have so stated. Ordinarily, an indemnity policy is for the purpose of protection against liability and not for the creation or increase of liability. The policy is not to be construed as meaning liability affected by the insurance contract, unless the latter so states and specifies.

"The question of whether under the circumstances the money of the county is wisely spent is not before us. Suits are defended even if groundless and attachment bonds must be furnished. County commissioners unversed in the law may find some justification for the purchase of public liability indemnity policies.

"It is said that the county and the insurer waived any immunity by the execution and delivery of the policy. However, the doctrines of waiver and es-

toppel cannot be used to bring within the coverage of the policy risks not included within its terms. 'It has been broadly stated that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect rights reserved therein. While an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting on a forfeiture of a policy, under no conditions can the coverage or restrictions on coverage be extended by waiver or estoppel.' 16 Appleman, Insurance Law and Practice 629."

Also in accord with the majority holding is *Maffei* v. *Incorporated Town of Kemmerer,* 80 Wyo 33 (338 P2d 808, 340 P2d 759). Referring to decisions from other States to the effect that there may be no relinquishment of a municipality's immunity except by specific legislative authority, it was said (p 59) :

"We, therefore, hold it is beyond the power of a municipality to waive an immunity which it possesses by virtue of its being an arm of the State's government and that any waiver of such an immunity must come by direct action of the legislature or through the clear and unmistakable implication of its legislative acts."

The court also took occasion to comment on the claim that if a judgment against the municipality were limited to the amount of insurance protection no tax moneys would be required to make payment. In part, it was said (p 56) :

"It cannot be assumed that the town will at all events be reimbursed by the insurance company for the amounts the town would be compelled to pay to satisfy a judgment rendered against it. Nor may it be assumed that the town would even recover a judgment against the insurance company if and when the town brought action against the company under the contract of insurance. Furthermore, if

judgment is obtained by the town against the insur-
ance company in such an action, it might not be col-
lectible as the company might become insolvent and
unable to make the required payment. The most
the town obtains by its purchase of insurance is a
possible cause of action against the insurer. On the
other hand, the town's judgment creditor can always
and at all events make collection from the town
whether it has funds immediately available or must
later obtain them by taxation.  See section 32–208,
W.C.S. 1945.*"

In *Livingston* v. *Regents of New Mexico College
of Agriculture and Mechanic Arts,* 64 NM 306 (328
P2d 78), the plaintiff, a minor, was injured as the
result of alleged negligence on the part of an em-
ployee of defendant college. It was alleged that at
the time the defendant regents carried liability in-
surance with the United States Fidelity & Guaranty
Company protecting defendants against liability up
to and including the limits of the policy. Judgment
was prayed against the regents in such sum as would
equal the policy limits.  Defendant regents' motion
to dismiss was granted by the trial court and the
order of dismissal was affirmed by the supreme court
of the State.  In reaching its conclusion the appel-
late court quoted (p 312) from the prior decision of
*Dougherty* v. *Vidal,* 37 NM 256, 262 (21 P2d 90, 93),
as follows:

" 'We are warned, however, that one branch of
government may not safely or wisely carry its zeal
for the rights of the citizen so far as to encroach
upon the functions of a co-ordinate branch.  *   *   *
*The legislature is no doubt as sensitive to injustice
as the courts.*  By unsound or specious reasoning
we might arrive at rough justice in a particular case.
More often we could do nothing.  *It is better that all*

---

* See Wyo Stat, 1957, § 39-62.—REPORTER.

*understand that the legislative responsibility is undivided.'* (Emphasis ours.)"

The court further commented (p 312):

"Are we to say that the legislature should have expanded the provisions of the 1941 act so as to have permitted recovery in an action such as this; and that the legislature having failed to do so, we will declare such to be the policy of this State?

"To do this, we think, would usurp the functions of the legislative branch of our government. *Dougherty* v. *Vidal, supra; Vigil* v. *State,* 56 NM 411 (244 P2d 1110).

"We hold that a suit based upon tort against a State agency such as the regents, demanding judgment only to the extent that such agency is protected by liability insurance, violates the rule of governmental immunity from suit. The order of the lower court dismissing the action as to the defendant board of regents is affirmed."

By analogy the above cited cases sustaining the majority rule are in accord with the holding of this Court in *DeGroot* v. *The Edison Institute,* 306 Mich 339. In that case the plaintiff brought an action for damages claimed to have resulted from negligence on the part of the defendant. The proofs indicated that the Institute was a nonprofit and public benevolent institution. The trial court granted defendant's motion for judgment notwithstanding the verdict of the jury in plaintiff's favor, and this Court approved under the rule that eleemosynary institutions are exempt in Michigan from liability based on the grounds asserted in plaintiff's declaration. It was stated that (pp 343, 344):

"Nor does the fact that the nonprofit corporation carries liability insurance so change its status as to make the corporation liable for an injury for which it would not otherwise be liable."

Other decisions in States adhering to the majority rule are in accord with the above cases, the opinions in which indicate the weight of authority and the reasons on which the prevailing rule rests. The New Hampshire decision, *supra,* fairly epitomizes the proposition at issue with its statement indicating that the purpose of a policy of insurance is to indemnify the insured rather than to create liability. As hereinbefore noted, however, the acceptance of plaintiff's claim as to the effect that may be given to the existence of a general policy of indemnity insurance rests on the theory that by such a contract the abrogation or modification of the doctrine of governmental immunity has resulted.

In the instant case it is clear that under the provisions of our Constitution the board of regents of the university of Michigan is not invested with legislative powers. Its powers and duties have reference to the administration of the affairs, educational and financial, of the university. Whether the rule of governmental immunity should be modified or abrogated is a legislative matter, and in the final analysis the authority must be exercised in accordance with Constitutional provisions relating to the legislative department of government. Obviously the people, by Constitutional amendment, have full authority to act. Whether the State legislature may by general law abrogate or modify the existing rule of governmental immunity as to defendant board of regents is not involved in the instant case. No such law has been enacted. So far as the instant case is concerned, defendant board of regents has not by express resolution undertaken to abolish or alter such rule of immunity which it has possessed from the time of its creation. For the reasons above pointed out, it is without power to take such action, and what it may not do expressly may not be accomplished im-

pliedly through or by means of a contract of indemnity insurance.

The conclusion follows that the examination of the policy to which the order of the circuit court had reference would not enable counsel for plaintiff to allege in their declaration a cause of action against defendant board of regents. Such policy would not be entitled to admission in evidence in the trial of the case and, in consequence, it must be said that Michigan Court Rule No 35, § 6 (1945),* on which plaintiff's petition for discovery was based did not authorize the order from which the appeal has been taken.

Counsel for appellant calls attention to the decision of this Court in *Robinson* v. *Washtenaw Circuit Judge,* 228 Mich 225, in which it was held that the hospital of the university of Michigan was a charitable or eleemosynary institution, because supported at public expense, and that the regents of the university were not liable for damages for injuries, alleged to have been suffered by plaintiff while a surgical patient in the hospital, because of the status thereof, as well as on the ground that as an agency of State government the general rule of immunity was applicable. Attention is directed to the fact that the injuries sustained by plaintiff in the instant case were suffered in 1953. In the prevailing opinion in the case of *Parker* v. *Port Huron Hospital,* 361 Mich 1, it was held that the change in the rule as to the liability of charitable nonprofit hospital organizations should apply in that case and (p 28) "to all future causes of action arising after September 15, 1960." It is suggested in substance that the decision in *Parker* may not be applied to the instant case in view of the limitation as to the effective time of the holding. Also involved is the question whether such holding is applicable to the hospital of the uni-

---

* As added June 27, 1952 and amended June 11, 1958. See 334 Mich xl and 352 Mich xvii.—Reporter.

versity of Michigan which under the provisions of the State Constitution is subject to supervision and control by the defendant board of regents. However, we think that the instant case should be determined on the basis that the doctrine of governmental immunity is applicable to the defendant.

The case should be remanded with directions to set aside the order from which defendant has appealed.

KELLY, J., concurred with CARR, J.

DETHMERS, C. J., and TALBOT SMITH, J., did not sit.